**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Annette GONZALEZ–ACOSTA, Defendant–Appellant.**

No. 92–2146.

United States Court of Appeals, Tenth Circuit.

March 22, 1993.

---

Don J. Svet, U.S. Atty., and Judith A. Patton, Asst. U.S. Atty., Las Cruces, NM, on the brief, for plaintiff-appellee.

R. Morgan Lyman, Asst. Federal Public Defender, Las Cruces, NM, on the brief, for defendant-appellant.

Before LOGAN, HOLLOWAY, and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Defendant Annette Gonzalez–Acosta appeals her conviction for possession with intent to distribute marijuana. She raises three questions for our review: (a) whether the district court erred in denying her motion to suppress; (b) whether the court erred in denying her motion for pretrial production of canine records; and (c) whether the court erred in denying her motion for an independent weighing of the marijuana for sentencing. Finding no error, we affirm.

The trial court found and the record indicates the following circumstances. On October 31, 1991, defendant drove into a permanent border patrol station in Otero County, New Mexico. At the primary inspection area, she and the vehicle's other occupant produced valid resident alien cards. However, because defendant avoided eye contact and appeared to be slightly nervous, U.S. Border Patrol Agent Reymundo H. Sanchez inquired where she was going. Defendant responded that she was traveling to Ruidoso, New Mexico, for two days. The agent asked for and received permission to inspect the trunk of her vehicle. The trunk contained no luggage.

Another Border Patrol Agent, Eligio Pena, then squatted down and looked under the vehicle. Using a mirror and flashlight, Agent Pena saw shiny bolts on the gas tank support straps. Suspecting the gas tank had been altered to conceal narcotics, he referred defendant to the secondary inspection area and obtained verbal consent to conduct a dog search of the vehicle.

After the dog alerted, defendant signed a written form consenting to a full search of the vehicle. Agents retrieved approximately 25 pounds of marijuana from the vehicle's gas tank.

On November 20, 1991, defendant was indicted for possession with intent to distribute less than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). She pled not guilty and filed motions for pretrial production and to suppress the evidence. The motions were denied.

Defendant was tried twice. Her first trial ended in a mistrial because the jury could not reach a unanimous decision. She was retried and convicted in March 1992.

I.

The district court denied defendant's motion to suppress on the ground that the

border patrol agents had reasonable suspicion to conduct the undercarriage inspection and the dog search. Specifically, the court found "everything the officer did was more than reasonable, and his suspicions were justified; there was no illegal detention and no illegal search."

On appeal, defendant contends the district court's finding of reasonable suspicion is "clearly erroneous." Defendant maintains because permanent border patrol stops must be immigration-related, she should have been free to leave once she produced valid documentation. Instead, she was involuntarily detained at the primary checkpoint area while Agent Pena searched the undercarriage of her vehicle. According to defendant, her detention was unlawful because the inspection "was directed toward matters unrelated to the original [immigration-related] reason for the stop" and because Agent Pena lacked reasonable suspicion. Thus, she claims the marijuana seized by the agents must be "suppressed as a fruit of her unlawful detention."

■ The standard of review for denial of a motion to suppress "is well established." *United States v. Benitez*, 899 F.2d 995, 997 (10th Cir.1990). "[T]he trial court's finding of fact must be accepted by this court unless clearly erroneous, with the evidence viewed in the light most favorable to the district court's finding." *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986) (citations omitted) (quoting *United States v. Lopez*, 777 F.2d 543, 548 (10th Cir.1985)). Moreover, "[i]f or where findings are not made, this court must uphold the ruling if there is any reasonable view of the evidence to support it." *United States v. Neu*, 879 F.2d 805, 807 (10th Cir.1989) (citation omitted). The ultimate determination of reasonableness under the Fourth Amendment, however, is a conclusion of law which we review *de novo*. *United States v. Butler*, 904 F.2d 1482, 1484 (10th Cir.1990) (citations omitted).

■ "The Fourth Amendment is not a guarantee against all searches and seizures, but only against unreasonable searches and seizures." *Espinosa*, 782

F.2d at 890 (citation omitted). Consequently, "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *United States v. Johnson*, 895 F.2d 693, 696 (10th Cir.1990) (citations omitted) (quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)). Moreover, "[n]o individualized suspicion is necessary to stop, question and then selectively refer motorists to a secondary inspection checkpoint." *United States v. Sanders*, 937 F.2d 1495, 1499 (10th Cir.1991) (citations omitted), *cert. denied*, —— U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992). Thus, the initial inquiry is whether the undercarriage inspection of defendant's vehicle amounted to a "search" within the meaning of the Fourth Amendment.

■ The Supreme Court has held that "[w]hat a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (citations omitted). "Nor is it a search when a law enforcement officer makes visual observations from a vantage point he rightfully occupies." *United States v. Burns*, 624 F.2d 95, 100 (10th Cir.) (citation omitted), *cert. denied*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980). Thus, if an object is in plain view, "neither its observation nor its seizure would involve any invasion of privacy." *Horton v. California*, 496 U.S. 128, 133, 110 S.Ct. 2301, 2306, 110 L.Ed.2d 112 (1990) (citations omitted). Moreover, "the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection." *Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) (citations omitted). Likewise, an officer may "change[ ] [his] position" and "ben[d] down at an angle" to see what is inside a car, because "there is no reason [why an officer] should be precluded from observing ... what would be entirely visible to him as a private citizen." *Id.* Ap-

plying this reasoning to the instant appeal, we conclude the undercarriage inspection of defendant's vehicle did not constitute a "search" within the meaning of the Fourth Amendment. Consequently, we do not reach the issue of reasonable suspicion.

■ We also reject defendant's contention that border patrol agents must confine their activities to immigration-related matters. To the contrary, "[b]order patrol agents are not required to ignore suspicious circumstances, even if such circumstances may not be pertinent to citizenship and immigration status." *United States v. Rubio–Rivera*, 917 F.2d 1271, 1276 (10th Cir.1990) (citations omitted). Moreover, "[d]etention and questioning at borders based only on suspicious circumstances are approved as consistent with the accepted government policy of ensuring that ... no one is permitted to secrete contraband through the border." *Sanders*, 937 F.2d at 1500. Therefore, border patrol agents may ask motorists to explain suspected drug activity because such questioning "bears a reasonable relationship to their unique duties." *Id.*

■ In *Sanders*, we noted that although a border patrol agent may question an individual about his citizenship and ask him to explain suspicious circumstances, "any further detention must be based on the individual's consent or probable cause, or upon a valid investigative detention." *Id.* at 1499 (citations omitted). Here, both border patrol agents testified defendant consented to the dog search of her vehicle. By not challenging this evidence on appeal, defendant has implicitly admitted the dog search was consensual. Thus, she cannot now contend her consent was infected by an unlawful detention. *See Espinosa*, 782 F.2d at 891. Moreover, "[o]nce the dog alerted the agents to the presence of narcotics, the agents had probable cause to search the car." *United States v. Pinedo–Montoya*, 966 F.2d 591, 594 (10th Cir.1992). Consequently, we conclude the district court properly denied defendant's motion to suppress.

## II.

■ Before the suppression hearing, defendant filed a motion for pretrial production of the training file for the dog that sniff-searched her vehicle. Specifically, she sought "training records, veterinary records, false-positive/false-negative alert records and all other records establishing the dog's ability to smell." Defendant argued the dog search was suspect because the dog had been recovering from a serious injury and had false-alerted upon initial contact with her vehicle. The district court decided to proceed with the suppression hearing before determining whether the records were necessary.

At the suppression hearing, Agent Pena, the dog's handler, testified that although the dog had been injured several months earlier, the dog was certified on the day defendant's vehicle was searched. He also stated that the dog had never false-alerted during its three years of service. Though the court ultimately denied defendant's motion for pretrial production, it nonetheless required the government to produce the canine log for the day of seizure.

On appeal, defendant contends the district court "abused its discretion" by not allowing her "to adequately cross-examine dog handler Pena about medications his dog may have taken regarding its ability to smell and false-positive alerts going to the dog's capacity to smell." According to defendant, the dog's training file was discoverable because "the dog's ability to smell to form probable cause is much like a machine that does or does not work."

■ In *United States v. Rogers*, 921 F.2d 1089, 1094 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2812, 115 L.Ed.2d 985 (1991), we determined that the proper standard of review for the denial of a motion filed under Fed.R.Crim.P. 17(b) was abuse of discretion. The same standard applies to the denial of defendant's Rule 17(c) motion for pretrial production of documentary evidence. Under this standard, "we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value." *United*

*States v. Ortiz,* 804 F.2d 1161, 1164 n. 2 (10th Cir.1986). Therefore, we will not disturb the district court's ruling unless we have "a definite and firm conviction" that the court "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.*

 Rule 17(c) of the Federal Rules of Criminal Procedure provides that "[a] subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein." However, the rule is "not intended to provide an additional means of discovery," but merely "to expedite the trial by providing a time and place *before* trial for the inspection of the subpoenaed materials." *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951) (citation omitted). Thus, to require production prior to trial, the moving party must demonstrate:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon,* 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103–04, 41 L.Ed.2d 1039 (1974). Similarly, on appeal from the denial of a Rule 17(c) motion, the movant must show that the subpoenaed document was relevant, admissible, and specific. *United States v. Arditti,* 955 F.2d 331, 345 (5th Cir.) (citation omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 597, 121 L.Ed.2d 534 (1992).

Defendant contends she made the requisite showing for pretrial production.[1] We disagree. First, we do not believe the documents were relevant because the dog was certified on the day in question and because the dog properly alerted to the presence of contraband. *See generally United States v. McCranie,* 703 F.2d 1213, 1218 (10th Cir.) (alert by explosives-sniffing dog not formally trained to detect drugs nonetheless created reasonable suspicion that defendant's suitcase contained contraband), *cert. denied,* 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983); *United States v. Williams,* 726 F.2d 661, 663–64 (10th Cir.) (concluding dog alert was valid despite dog's somewhat anomalous behavior in detecting the presence of narcotics), *cert. denied,* 467 U.S. 1245, 104 S.Ct. 3523, 82 L.Ed.2d 830 (1984). Indeed, had the dog's records indicated it had false-alerted in the past, defendant's ability to cross-examine would not have been enhanced because there is no doubt it correctly alerted in this instance. Moreover, based on defense counsel's extensive cross-examination of Agent Pena at the suppression hearing, we simply cannot say the defendant was precluded from either preparing for the suppression hearing or from exploring the issue of dog reliability.[2] Thus, we affirm the district court's denial of defendant's motion for pretrial production because the ruling was not "arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Hernandez–Herrera,* 952 F.2d 342, 343 (10th Cir.1991) (quoting *United States v. Cardenas,* 864 F.2d 1528, 1530 (10th Cir.) (citation omitted), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989)).

### III.

 Prior to sentencing, defendant filed a motion to independently weigh the

---

**1.** Specifically, she claims the documents were both evidentiary and relevant "not only for the Suppression Hearing in chief, but also for impeachment purposes"; "[t]here was no other way ... to obtain these records" because the documents were held by the El Paso border patrol; she was unable to properly prepare for the suppression hearing without them; and her request was not a fishing trip, but a legitimate attempt to determine the dog's reliability.

**2.** Agent Pena's testimony on cross-examination revealed that the dog fractured its leg in January 1990. Over the next several months, the dog underwent various operations, suffered a long bout of infection, and lost its drug-sniffing certification. On the day it searched defendant's vehicle, the dog had been recertified for only three weeks and may have been medicated.

marijuana seized by the border patrol agents, alleging the trial weight of 10.049 kilograms increased her base offense level from 14 to 16.[3] Defendant claimed she was entitled to reweigh the marijuana because the length of her sentence "could be affected" by the additional 49 grams of the substance. Defendant further submitted that although she "stipulated at trial that the *gross* weight of the seized marijuana was 27 pounds," she "did not stipulate what the net weight of marijuana was to be for sentencing purposes." The district court ultimately denied the motion, finding "the government and the defendant had stipulated as to the weight of the marijuana and [defendant showed] no cause ... why that stipulation should not be binding."[4]

On appeal, defendant advances the same arguments contained in her original motion. In addition, she contends "[a]bsent a jury finding regarding the amount of the marijuana, the trial court should not be able to decide on its own accord that the amount of marijuana presented before the jury was that amount at sentencing." Thus, according to defendant, the district court "erroneously concluded that a stipulation for trial purposes was the same as a stipulation for sentencing purposes."

In *United States v. Dailey*, 918 F.2d 747 (8th Cir.1990), the Eighth Circuit considered the same argument under virtually identical circumstances and concluded "the [district] court may, in its discretion, rely upon stipulations between the government and the defendant in determining the facts relevant to sentencing." *Id.* at 748 (citations omitted). The court further held "[a] stipulation made for trial purposes is no less binding at sentencing." *Id.* (citation omitted). We adopt this reasoning and find the district court did not abuse its discretion in denying defendant's motion to independently weigh the evidence.[5] *See United States v. Stanberry*, 963 F.2d 1323, 1326 (10th Cir.1992) (citation omitted) ("It is axiomatic that the facts relevant to guilt or innocence are for a jury to decide and that the facts relevant to sentencing are for the sentencing court to decide."). In so holding, we note that because defendant's current sentence is within the guideline range for base offense levels 14 *and* 16, we cannot say she was harmed by the district court's denial of her motion to reweigh the evidence.[6]

**AFFIRMED.**

---

3. Under U.S.S.G. § 2D1.1.(a)(3), conviction for 5–10 kilograms of marijuana leads to a base offense level of 14, while conviction for 10–20 kilograms results in a base level of 16.

4. The parties' stipulated in writing that "the gross weight of the seized marijuana is 27 pounds and the net weight is 22.15 pounds" (10.047 kilograms). The stipulation was read to the jury and admitted as Government Exhibit No. 5.

5. Our holding is not inconsistent with *United States v. Padilla*, 947 F.2d 893 (10th Cir.1991). There, although we observed that "Fed. R.Crim.P. 16(a)(1)(C) [normally] would entitle defendant to an independent weighing," we nonetheless concluded that "when defendant failed at sentencing to challenge the weight of heroin in the charged offense, he waived the right to challenge it on appeal." *Id.* at 895. Similarly, here defendant waived her right to challenge the amount of marijuana by stipulating to its weight at trial. Nor is our holding at odds with *United States v. Puryear*, 940 F.2d 602, 603–04 (10th Cir.1991), wherein we reversed the district court's order convicting the defendant for *misdemeanor possession* but sentencing him for *felony possession* because drug quantity was an essential element of the charged offense.

6. Defendant has been sentenced to 21 months' imprisonment followed by 3 years' supervised release. The sentencing guideline range would be 15 to *21* months even if the marijuana weighed less than 10 kilograms, based on a criminal history category of I and a base offense level of 14. Similarly, the supervised release period for the offense would be 3 to 5 years regardless of the amount of marijuana seized. *See* U.S.S.G. § 5D1.2.(a).