**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SHAKIR ABDUSH-SHAKUR,
formerly known as Leonard Scott
Cunningham,

Defendant - Appellant.

No. 05-3147

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 04-CR-20132-JWL)**

---

Kim I. Martin, Assistant United States Attorney (Eric F. Melgren, United States
Attorney, on the brief), Kansas City, Kansas, for Plaintiff - Appellee.

Melissa Harrison, Assistant Federal Public Defender (David J. Phillips, Federal
Public Defender, on the briefs), Kansas City, Kansas, for Defendant - Appellant.

---

Before **HENRY, ANDERSON** and **O'BRIEN**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

On December 2, 2004, Shakir Abdush-Shakur, an inmate at the United

States Prison at Leavenworth, was convicted of attempted murder, and possession

of a handmade knife by a prison inmate, arising out of the May 18, 2003 stabbing of prison Senior Officer Specialist, Timothy McDonald.  On March 9, 2005, he was sentenced to a total of 240 months imprisonment.  He appeals from his conviction alleging various trial errors.  We affirm.

## Background

On May 29, 2003, Abdush-Shakur was charged in a two-count indictment with attempted murder and possession of a prohibited object in violation of 18 U.S.C. §§ 1113 and 1791(a)(2), respectively.  After several successful motions for continuance lodged by defense counsel, trial was set for December 9, 2003.  On December 3, 2003, the government filed a motion for a continuance of the trial date, followed the next day by the government's motion to dismiss the indictment due to the illness of government counsel.  On December 8, 2003, the indictment was dismissed without prejudice over the objection of Abdush-Shakur.

On April 1, 2004, a second indictment charging the same offenses was filed under the same case number.  On May 17, 2004, Abdush-Shakur filed a motion to dismiss the indictment for violation of his right to speedy trial.  The court granted his motion on June 28, 2004, and dismissed the indictment without prejudice.  On September 16, 2004, the government filed a third indictment.  Although filed under a new case number the substance remained unchanged.  Abdush-Shakur moved to dismiss the third indictment on October 18, 2004.  On October 27, 2004, the district court denied the motion.  On November 10, 2004, a superseding

third indictment was filed adding Abdush-Shakur's former name of Leonard Cunningham, but making no other changes.

Prior to trial, Abdush-Shakur filed a Federal Rule of Criminal Procedure 17(c) request for records including those relating to prior altercations between Abdush-Shakur and Officer McDonald. The district court denied the motion. Abdush-Shakur also designated Steve Martin as an expert witness to testify about the prison environment, which defense counsel argued should play a role in the jury's determination of intent. The government filed a motion *in limine* to exclude the proffered testimony; it was granted.

Finally, during *voir dire*, the government used two of its six peremptory challenges to exclude two of the three African-American jurors from the jury. Defense counsel's objection based on *Batson v. Kentucky*, 476 U.S. 79 (1986), was overruled by the district court. On December 2, 2004, the jury convicted Abdush-Shakur of attempted murder and possession of a prohibited object.

## Discussion

Abdush-Shakur asserts the district court erred in four respects: 1) by denying his motion to dismiss the indictment as a violation of the Speedy Trial Act and his Sixth Amendment and Due Process rights; 2) by excluding the testimony of his expert witness, Steve Martin; 3) by denying his request for the production of documents under Federal Rule of Criminal Procedure 17(c); and 4) by permitting the prosecutor to exclude potential jurors based on race in violation

-3-

of *Batson*.

## I. Motion to Dismiss

Abdush-Shakur argued to the district court that the third indictment should be dismissed as a violation of the Speedy Trial Act and his Sixth Amendment and Due Process rights. The district court denied the motions to dismiss. Abdush-Shakur reasserts his arguments on appeal.

### A. Speedy Trial Act

Abdush-Shakur argues the district court erred when dismissing the second indictment without prejudice for violating the Speedy Trial Act, thus requiring the third indictment to be dismissed as well. We "review the district court's denial of a motion to dismiss for violation of the [Speedy Trial] Act for an abuse of discretion, and review the district court's compliance with the legal requirements of the Act de novo." *United States v. Lampley*, 127 F.3d 1231, 1244 (10th Cir. 1997). "We accept the district court's factual findings in a Speedy Trial Act order unless they are clearly erroneous." *United States v. Vogl*, 374 F.3d 976, 982 (10th Cir. 2004). "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *United States v. Cano-Silva*, 402 F.3d 1031, 1035 (10th Cir. 2005) (quotation omitted).

The Speedy Trial Act is "designed to protect a criminal defendant's constitutional right to a speedy trial and to serve the public interest in bringing

prompt criminal proceedings . . . ." *United States v. Apperson*, 441 F.3d 1162, 1177-78 (10th Cir. 2006). Congress enacted the Speedy Trial Act in part because "the Supreme Court had been reluctant to define specific time periods under the speedy trial guarantee of the Sixth Amendment . . . ." *Vogl*, 374 F.3d at 982. While the Speedy Trial Act certainly adds protection to a defendant's already existing Fifth and Sixth Amendment rights, statutes of limitations remain "the primary guarantee against bringing overly stale criminal charges." *United States v. Marion*, 404 U.S. 307, 322 (1971) (discussing Sixth Amendment right to a speedy trial).

The Speedy Trial Act "requires that the trial of a criminal defendant commence within seventy days of the filing of the indictment, or from the date that the defendant first appears before a judicial officer, whichever is later." *United States v. Gomez*, 67 F.3d 1515, 1519 (10th Cir. 1995); 18 U.S.C. § 3161(c)(1).[1] Subject to statutory exclusions, "[i]f a defendant is not brought to trial within the seventy-day deadline, dismissal of the indictment is mandatory."

---

[1]Section 3161(c)(1) provides in relevant part:

In any case in which a plea of not guilty is entered, the trial of a defendant charged in an . . . indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

*United States v. Doran*, 882 F.2d 1511, 1517 (10th Cir. 1989).[2] The "indictment

shall be dismissed on motion of the defendant." *United States v. Vaughn*, 370

F.3d 1049, 1055 (10th Cir. 2004).

Nevertheless, the district court retains broad discretion whether to dismiss

the indictment with or without prejudice. *Doran*, 882 F.2d at 1518. 18 U.S.C. §

3162(a) provides:

> In determining whether to dismiss . . . with or without prejudice, the
> court shall consider, among others, each of the following factors: the
> seriousness of the offense; the facts and circumstances of the case
> which led to the dismissal; and the impact of a reprosecution on the
> administration of this chapter and on the administration of justice.

Prejudice to the defendant is among the "other" factors the text of § 3162 directs

the district court to consider. *United States v. Taylor*, 487 U.S. 326, 334 (1988);

*see also id.* at 344-46 (Scalia, J. concurring). "[T]he application of the more

severe sanction of dismissal with prejudice . . . should be reserved for more

egregious violations." *Cano-Silva*, 402 F.3d at 1035.[3] A violation of the speedy

---

[2]The seventy-day deadline takes into account various excludable events that do not count against the seventy-day period. *See* 18 U.S.C. § 3161(h). Thus, for example, continuances may be excluded from the seventy-day period if the district court makes a finding on the record that "the ends of justice served by taking [the] action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A); *Doran*, 882 F.2d at 1515-17. The time exclusions made by the district court are not at issue on appeal.

[3]The Supreme Court recently stated:

> This scheme is designed to promote compliance with the Act without
> needlessly subverting important criminal prosecutions. The more severe
> sanction (dismissal with prejudice) is available for use where

trial requirement, by itself, is not a sufficient basis for dismissal with prejudice.

*Id*.

Based on the record before us, the district court did not err by dismissing

the second indictment without prejudice.[4]  First, as Abdush-Shakur concedes,

appropriate, and the knowledge that a violation could potentially result in the imposition of this sanction gives the prosecution a powerful incentive to be careful about compliance.  The less severe sanction (dismissal without prejudice) lets the court avoid unduly impairing the enforcement of federal criminal laws - though even this sanction imposes some costs on the prosecution and the court, which further encourages compliance.  When an indictment is dismissed without prejudice, the prosecutor may of course seek - and in the great majority of cases will be able to obtain - a new indictment, for even if "the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned . . . within six calendar months of the date of the dismissal."

*Zedner v. United States*, 126 S.Ct. 1976, 1984-85 (2006) (quoting 18 U.S.C. § 3288).

[4]Under § 3161(d)(1), if an indictment is dismissed upon motion of the defendant and he is subsequently re-indicted with the same offense, the new indictment begins a new seventy-day period.  *See* § 3161(c); *see also United States v. Andrews*, 790 F.2d 803, 809 n.4 (10th Cir. 1986); *United States v. Brown*, 183 F.3d 1306, 1310 (11th Cir. 1999) ("[Section] 3161(d)(1) resets the periods in which a defendant must be indicted and tried.")*; United States v. Duque*, 62 F.3d 1146, 1150 (9th Cir. 1995) (holding the "Speedy Trial Act clock starts fresh" when the defendant moves to dismiss and is reindicted)*; United States v. Giambrone,* 920 F.2d 176, 179 (2d Cir. 1990) ("[W]hen the indictment is dismissed on motion of the defendant and there is reprosecution, the 70-day period provided by § 3161(c) begins anew.").  Thus, because the Second Indictment was dismissed on Abdush-Shakur's motion, the Third Indictment began a new seventy-day period.

However, where *the government* moves to dismiss the indictment, as it did with the First Indictment here, and then refiles a second indictment alleging the same charges, the government does not get a new seventy-day clock.  *See United States v. Gonzalez*, 137 F.3d 1431, 1433-34 (10th Cir. 1998); *United States v.*

attempted murder is a serious offense. Second, contrary to Abdush-Shakur's

assertion, the delay between his initial appearance and his trial was not

"completely due to the Government." (Appellant's Br. at 36.) It is true that the

illness of government counsel contributed to the delay. *See Cano-Silva*, 402 F.3d

at 1036 ("Whenever a Speedy Trial Act violation takes place, it is very likely that

the government has made a mistake of some sort; in order to secure a dismissal

with prejudice a defendant must do more than point to that mistake with rising

indignation."). However, the government's behavior in this case was not

egregious. There is no indication the government was dilatory or neglectful in its

prosecution of Abdush-Shakur, or that it otherwise acted in bad faith. *See Taylor*,

487 U.S. at 338-39. Indeed, at the hearing on Abdush-Shakur's motion to dismiss

the Second Indictment, defense counsel agreed "all parties acted professionally."

(R. Vol. IV at 51.) Moreover, as the district court pointed out, another important

source of delay was three continuances requested by Abdush-Shakur and allowed

by the court, but without the appropriate finding under § 3161(h) which would

---

*Broadwater*, 151 F.3d 1359, 1360 (11th Cir. 1998) ("If *the government* moves to dismiss a count following a mistrial, it does not get a 'fresh clock' on reindictment; rather, the time is tolled from the dismissal of the original count until the reindictment.") (emphasis added); *United States v. Menzer,* 29 F.3d 1223, 1227-28 (7th Cir. 1994); *United States v. Hoslett,* 998 F.2d 648, 658 (9th Cir. 1993); *United States v. Leone,* 823 F.2d 246, 248 (8th Cir. 1987) (same). "The reason for this rule is obvious. If the clock began anew, the government could circumvent the limitations of the Speedy Trial Act by repeatedly dismissing and refiling charges against a defendant." *Hoslett*, 998 F.2d at 658 n.12; *see also United States v. Rojas-Contreras*, 474 U.S. 231, 239 (1985) (Blackmun, J., concurring) (same).

have excluded that time from inclusion in the computation of Abdush-Shakur's speedy trial calculation. The district judge took much of the blame for the delay;[5] nevertheless, Abdush-Shakur must also shoulder his share of the responsibility for the delay.

Reprosecution of this case did not negatively affect the administration of justice. Abdush-Shakur concedes his incarceration throughout the proceedings was based on his sentence for the commission of another crime. Nor, as the district court pointed out, would penalizing the government for the delay deter any similar behavior in the future.[6] Where the delay caused by the government is unintentional and the district court takes it upon itself to share in the blame for the delay, the administration of justice is not served by dismissal with prejudice. *See United States v. Kottmyer*, 961 F.2d 569, 573 (6th Cir. 1992) ("Since the government's conduct was apparently unintentional and since the blame was shared by the court," the district court was correct in concluding that "dismissal with prejudice would only affect the prosecutor in this case and would not serve the interests of the public.").

Finally, there is no evidence of sufficient prejudice to Abdush-Shakur to

---

[5]The district court stated it "wasn't the prosecution's fault that we're here. It was - it's my fault that we're here." (R. Vol. IV at 87-88.)

[6]The district court found: "There is nothing that's going to deter me from failure to make appropriate speedy trial findings by allowing this defendant the windfall of having these charges dismissed." (R. Vol. IV. at 87-88.)

require dismissal with prejudice. First and foremost, the fact the defendant was subsequently found guilty does not qualify as the type of prejudice relevant to the analysis under § 3162. Additionally, because Abdush-Shakur had ten years imprisonment remaining at the time of his assault on McDonald, any delay did not affect the amount of time he spent confined. While he may have been removed from isolation if the charges had been dismissed, that fact, weighed in the balance of the circumstances in this case, does not require the dismissal to be with prejudice. Abdush-Shakur claims a witness to the attack, Latorious Willis, "could not be found," but that bald allegation is insufficient to establish prejudice. (Appellant's Br. at 38.) There is no evidence "the defendant . . . lost a crucial witness" because of the delay, nor did he offer any evidence as to how the absence of this witness testimony prejudiced his case. *See United States v. Saltzman*, 984 F.2d 1087, 1094 (10th Cir. 1993) ("[T]he defendant has a burden under the [Speedy Trial] Act to show *specific prejudice* other than that occasioned by the original filing.") (emphasis added). Thus, the second indictment was appropriately dismissed without prejudice and any intervening time between indictments was not covered by the Speedy Trial Act.

    B. Sixth Amendment Right to a Speedy Trial

    Abdush-Shakur claims the delay between his first indictment on May 29, 2003, and his third indictment on September 16, 2004, violates his Sixth Amendment right to a speedy trial. We think not.

The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald*, 456 U.S. 1, 8 (1982).

In determining whether a defendant's Sixth Amendment right to a speedy trial has been violated, a court must balance four factors: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *United States v. Lugo*, 170 F.3d 996, 1002 (10th Cir. 1999). "None of these factors, taken by itself, is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995) (quotation omitted). It is unusual to find a Sixth Amendment violation when the Speedy Trial Act has been satisfied. *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002).

"We need only inquire into the other factors if the period of delay is 'presumptively prejudicial.'" *Lugo*, 170 F.3d at 1002 (*quoting United States v. Dirden*, 38 F.3d 1131, 1137 (10th Cir. 1994)). In this case, the parties disagree as to whether the relevant period of delay under consideration was eleven or

fourteen months. The latter delay, but not the former, might qualify as presumptively prejudicial. *See Gomez*, 67 F.3d at 1523 (twelve and one-half month delay held not prejudicial).

Regardless of the length of delay, the second prong — the reason for the delay, clearly does not suggest a violation of the Abdush-Shakur's Sixth Amendment rights. As discussed above, prior to the government's request for a continuance due to the poor health of one of its counsel, Abdush-Shakur himself requested three continuances, the latest occurring in October of 2003. Delays attributable to the defendant do not weigh against the government. *Dirden*, 38 F.3d at 1138. We find little merit in defendant's assertion of his Sixth Amendment right to a speedy trial in the wake of the government's legitimate request for a continuance when the defendant has sat on his hands for seven months and requested several continuances of his own. Finally, as discussed above, there was little showing of actual prejudice to Abdush-Shakur. Thus, Abdush-Shakur failed to establish a violation of his Sixth Amendment right to a speedy trial based on the total delay in this case.[7]

---

[7]Because we find the total delay does not violate Abdush-Shakur's Sixth Amendment right to a speedy trial, we need not decide if the eighty day period between the dismissal of the second indictment and the refiling of the third indictment counts against his speedy trial right. *See United States v. Merrick*, 464 F.2d 1087, 1090-91 (10th Cir. 1972). We note the Supreme Court in *MacDonald*, held that "[o]nce charges are dismissed, the speedy trial guarantee is no longer applicable." 456 U.S. at 8. However, the Court noted that its opinion did not address the situation where "the Government dismissed and later reinstituted charges to evade the speedy trial guarantee." *Id*. at 10 n.12.

C. Fifth Amendment Right to Due Process

Finally, Abdush-Shakur advances a due process argument based on the delay "between the two dismissals and the re-indictments" as a basis for dismissal. (Appellant's Br. at 39.)

"[T]he Due Process Clause has a limited role to play in protecting against oppressive delay." *United States v. Lovasco,* 431 U.S. 783, 789 (1977). To prevail on such a claim, the defendant must prove (1) the delay resulted in substantial prejudice to his rights, and (2) the prosecution intentionally delayed prosecution in order to gain a tactical advantage. *United States v. Wood*, 207 F.3d 1222, 1234 (10th Cir. 2000); *United States v. Comosona*, 848 F.2d 1110, 1113 (10th Cir. 1988); *see also Lovasco*, 431 U.S. at 790 (Fifth Amendment Due Process Claim must consider both prejudice to the defendant and the reasons for the delay). We review this due process claim for clear error as it is a question of fact. *Wood*, 207 F.3d at 1234.

In this case, Abdush-Shakur fails to carry his burden on either prong. He fails to establish the delay caused him substantial prejudice. Again, Abdush-Shakur's "lost witness" claim fails because there is no evidence "the defendant . . . lost a crucial witness" because of the delay or that the absence of his testimony prejudiced Abdush-Shakur's case. (Appellant's Br. at 38.) "Vague and conclusory allegations of prejudice resulting from the passage of time and absence of witnesses are insufficient to constitute a showing of actual prejudice."

-13-

*United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir. 1998). Abdush-Shakur

has also failed to establish the prosecution intentionally delayed *to gain a tactical*

*advantage*. He asserts on appeal that the motion to dismiss due to the illness of

government counsel on "the eve of trial" was not a proper reason for dismissal

given the little time remaining on the speedy trial clock and the availability of

alternate government attorneys. (*Id*. at 41.) Even if there were other counsel

available, such a claim is insufficient to establish that the prosecution was

unfairly abusing the system to gain an advantage. Thus, Abdush-Shakur has

failed to establish a due process violation.

## II. Expert Witness

At trial, Abdush-Shakur sought to introduce the expert testimony of Steve

Martin, "a corrections consultant," who would have testified to the "culture of

violence" in federal penitentiaries and explain why an inmate who is

"disrespected" by a corrections officer might retaliate in a violent manner.

(Appellant's Br. at 18, 19, 20.) The district court excluded the testimony as

irrelevant to any material issue in the case. On appeal, Abdush-Shakur argues the

district court erred in excluding the testimony as it went directly to his motive in

attacking McDonald, and supported his contention that he only intended to wound

and not kill McDonald.

"We review de novo the question of whether the district court employed the

proper legal standard and performed its gatekeeper role in admitting expert

testimony" but review for abuse of discretion "the court's actual application of this standard in deciding whether to admit or exclude an expert's testimony." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006). Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Thus, the district court must ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). "Relevance is evaluated based on whether [the evidence] properly can be applied to the facts in issue." *McKenzie v. Benton*, 388 F.3d 1342 (10th Cir. 2004), *cert. denied*, 544 U.S. 1048 (2005).

In this case the testimony of Mr. Martin was proffered to establish a generic "culture of violence in prisons." (Appellant's Br. at 19.) Specifically, he would have testified that imprisonment makes a prisoner feel weak, vulnerable, and subject to exploitation, and thus a prisoner may feel the need to retaliate if provoked in order to avoid the appearance of weakness and prevent future exploitation. While the proffered testimony might "show that what Mr. Abdush-Shakur testified about was not unusual given the prison culture that exists in high

security facilities," (Appellant's Br. at 22), it does not excuse his attack on a corrections officer, nor does it negate any of the elements of the charged crime. Contrary to Abdush-Shakur's argument, such testimony does not negate his intent to kill. Rather it simply highlights a possible motive for his action. There is no basis in the proffered testimony to support an inference that Abdush-Shakur's motivation to retaliate for being disrespected would include assault but not attempted murder. The expert witness' testimony certainly does not try to draw such a line. Consequently, we agree with the district court that the proffered testimony was not relevant to the issues in this case. Therefore, the district court did not abuse its discretion in excluding the testimony under Rule 702.

## III. Production of Documents

On October 6, 2004, Abdush-Shakur filed a motion pursuant to Rule 17(c) requesting production of documents pertaining to prior confrontations between Abdush-Shakur and Officer McDonald. The district court denied the motion, holding "the defendant has been unable to articulate how the materials sought . . . would be relevant to the particular charges against him." (Vol. IV at 138.) On appeal, Abdush-Shakur argues the records of prior incidents between himself and McDonald were relevant to intent.

We review the district court's denial of a motion filed under Rule 17(c) for an abuse of discretion and "defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value."

*United States v. Gonzalez-Acosta*, 989 F.2d 384, 388 (10th Cir. 1993).  Thus, we will only disturb the district court's ruling if we have "a definite and firm conviction that the court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."  *Id*. at 389 (quotation omitted).

Rule 17(c) provides that "[a] subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein."  Rule 17(c) is "not intended to provide an additional means of discovery," but "to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."  *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).  A party seeking a subpoena duces tecum under Rule 17(c) must establish:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974).  Thus, "on appeal from the denial of a Rule 17(c) motion, the movant must show that the subpoenaed document was relevant, admissible, and specific."  *Gonzalez-Acosta*, 989 F.2d at 389.  Failure of one of these elements precludes reversal.  *See United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (affirming district court's suppression of a subpoena under Rule 17(c) where defendant arguably established relevance and admissibility, but not

specificity).

Abdush-Shakur's characterization of his request as pertaining only to "records relating to prior incidents between Mr. Abdush-Shakar and Officer McDonald" is misleading. (Appellant's Br. at 24.) In his motion, Abdush-Shakur requested all incident reports for the previous five-year period involving both inmate-on-inmate stabbings and inmate-on-guard stabbings, the complete personnel records of Officer McDonald, a complete copy of his own prison file, and a list of policies and procedures related to the treatment of the Muslim prison community. In support of this expansive request, Abdush-Shakur merely stated the requested documents were "material and integral to the defense" and that they were "evidentiary, relevant, and . . . requested in good faith." (R. Vol. I, Doc. 10 at 2.)

We agree with the district court that this is insufficient to satisfy Rule 17(c). Abdush-Shakur failed to state in his motion how the requested material related to the charges against him or how the documents were to be used in his defense. Conclusory statements do not establish relevance. Moreover, his argument on appeal — that evidence of his prior altercations with McDonald establish only an intent to wound — is beyond strange. In any event, as Abdush-Shakur points out, the government questioned McDonald about prior altercations. Abdush-Shakur makes no argument that the government's questioning was inadequate, that McDonald lied about any prior incidents, or that Abdush-Shakur was unable to question McDonald about the prior incidents.

Given McDonald's unchallenged testimony, there is no basis to require production of documents that we have no reason to believe would be anything but redundant to McDonald's testimony. Abdush-Shakur certainly has provided no such reason. Because we reject Abdush-Shakur's argument that the requested material is relevant, we need not address whether the material was admissible, the request sufficiently specific, or whether it constituted a "fishing expedition."

**IV. *Batson* Violation**

Abdush-Shakur challenged the government's use of two of its six peremptory challenges to excuse two minority venire members, Mr. Gallagher and Ms. Adams, alleging the government impermissibly excluded them based on race. The government asserted it excluded Gallagher because of a prior criminal conviction, and Adams based on the combination of having a family member in prison, having performed prison ministry, and for expressing sympathy with inmates. The district court credited the government's non-discriminatory reasons for the exclusion and overruled the objection. Ultimately, one African-American juror and eleven Caucasian jurors were empaneled. Abdush-Shakur concedes that the peremptory challenge of Gallagher was based not on race, but a prior criminal conviction for marijuana possession. (Appellant's Br. at 12.) This leaves only the racial challenge to Ms. Adams at issue on appeal.

The Equal Protection clause of the Fourteenth Amendment prohibits the removal of potential jurors by prosecutors based on their race. *Batson*, 476 U.S. at 86. We analyze a *"Batson* challenge under the burden-shifting framework recently clarified by

the Supreme Court in *Johnson v. California,* 545 U.S. 162, 125 S. Ct. 2410, 162 L.Ed.2d 129 (2005)." *United States v. Nelson*, 450 F.3d 1201, 1207 (10th Cir. 2006). The burden-shifting framework to be applied under *Batson* parallels "the burden-shifting framework in cases arising under Title VII of the Civil Rights Act of 1964." *Johnson*, 125 S. Ct. at 2418 n.7.

To prevail on his *Batson* claim, Abdush-Shakur must first establish that "he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Johnson*, 125 S. Ct. at 2416. But the defendant's burden does not stop there. He must also show "that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id*. (quoting *Batson*, 476 U.S. at 93-94). To accomplish this, the defendant may rely solely on the facts in his case concerning the selection of the jury. *Johnson*, 125 S. Ct. at 2416 n.5 (*quoting Batson*, 476 U.S. at 95.)

If the defendant makes out his prima facie case, the burden of production shifts to the prosecutor to present a race-neutral explanation for the strike. *Id*. at 2416. A race-neutral explanation is simply any explanation, no matter how implausible, that is "based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). The proffered reason need not be "persuasive, or even plausible," so long as it is facially valid. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). We review *de novo* whether a proffered explanation is race-neutral. *United States v. Castorena-Jaime*, 285 F.3d 916, 927 (10th Cir. 2002); *United States v. Sneed*, 34 F.3d 1570, 1580 (10th Cir.

1994).

"'If a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.'" *Johnson,* 125 S.Ct. at 2416 (quoting *Purkett,* 514 U.S. at 767). "This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Rice v. Collins,* -- U.S. --, 126 S. Ct. 969, 974 (2006) (quotation omitted). We review the district court's determination of whether intentional discrimination actually occurred under the clearly erroneous standard, as it is a question of fact. *Hernandez*, 500 U.S. at 364; *United States v. Davis*, 40 F.3d 1069, 1077 (10th Cir. 1994).

We acknowledge the Supreme Court has made clear that it "did not intend the first step [of the *Batson* inquiry] to be so onerous that a defendant would have to persuade the judge . . . that the challenge was more likely than not the product of purposeful discrimination." *Johnson*, 545 U.S. at 2417. Nevertheless, the defendant must still satisfy the requirements of the prima facie case. The fact a single minority venire member is peremptorily stricken, standing alone, is insufficient to establish the defendant's prima facie case. Such a scenario does not "give[] rise to an inference of discriminatory purpose." *Johnson*, 125 S. Ct. at 2416. We note that both in *Batson* and *Johnson*, the prima facie case was established where all minority members of the jury pool were stricken by the government. *Batson*, 476 U.S. at 83; *Johnson*, 125 S. Ct. at

-21-

2414; *see also Nelson*, 450 F.3d at 1205 (same); *United States v. Chalan*, 812 F.2d 1302, 1313-14 (10th Cir. 1987) (same). By citing *Batson* and *Johnson* in this manner, we do not mean to imply that absolute exclusion of all minority members is required to allow a *Batson* claim to go forward. *See Miller-El v. Dretke*, 125 S. Ct. 2317, 2325 (2005) (peremptorily striking ten of eleven eligible minority jurors sufficient to establish a *Batson* violation). Neither do we hold that striking a single minority venire member cannot establish the prima facie case where the venire member is the only minority member of the venire panel. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 854 (10th Cir. 2000) ("Ms. Heno met her prima facie case [for a *Batson* violation] by showing that Sprint used a peremptory to strike the only black juror on the panel."). Rather, we only note that the prima facie case articulated by the Supreme Court contemplates something more than simply establishing the minority status of the defendant and the exclusion of a single venire member who happens to be of the same race.

Striking two out of three minority panel members, however, is sufficient to satisfy a defendant's prima facie *Batson* claim, especially when the jurors were apparently the only two stricken. *See United States v. Johnson*, 4 F.3d 904, 912-14 (10th Cir. 1993) (striking two of three black members of a jury sufficient to force government to provide race-neutral reasons for dismissal). Thus, like the district court, we must consider the government's proffered non-discriminatory justifications.

The government asserted below, and now on appeal, that it excluded Ms. Adams

-22-

because she 1) had a brother who had been incarcerated at the United States Penitentiary at Leavenworth - the scene of the crime; 2) had worked with a prison ministry at Leavenworth; and 3) said she had "heard a lot of things that go on behind the doors from the inmates' point of view." (R. Vol. IV at 255.) In these circumstances, when the offense occurred in prison and the victim was a prison official, the incarceration of panel member's close relative and experience of the panel member in working with a prison ministry are, standing alone, legitimate non-discriminatory reasons for exclusion. Coupled with Ms. Adam's personal familiarity with inmate perspectives at Leavenworth, the government was within the permissible bounds of peremptory challenges to exclude her from a case involving the stabbing of a corrections officer by an inmate at Leavenworth.

Abdush-Shakur's attempt to prove the government's justification is a pretext by comparing Ms. Adam's profile to that of other non-excluded jurors falls short for the simple reason that he cannot point to a sufficiently similarly situated juror. Based on the record before us, Ms. Adams was unique in her combination of having a close family member who had been incarcerated at Leavenworth, of working in Leavenworth, and, most importantly, expressing personal familiarity with inmates' points of view.

Moreover, we note the government did not exclude all minority members of the jury. While not dispositive, such a fact tips the scales against finding intentional discrimination on the part of the government. *See United States v. Williamson*, 53 F.3d 1500, 1510 (10th Cir. 1995) ("[A]lthough the mere presence of members of a certain

race on the final jury does not automatically negate a *Batson* violation . . . it can be a relevant factor, particularly when the prosecution had the opportunity to strike them."). Considering all the factors, we agree with the district court that Abdush-Shakur failed to meet his burden of establishing the government's use of peremptory challenges in this case was motivated by intentional discrimination.

AFFIRMED.