**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEPHEN VINCENT HUNT,

Defendant-Appellant.

No. 07-1518
(D.C. No. 1:06-CR-00155-EWN-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

Defendant-Appellant Steven Vincent Hunt was convicted by a jury of six

counts of bank robbery in violation of 18 U.S.C. §§ 2113(a), (d) and an

accompanying six counts of firearms possession in violation of 18 U.S.C.

§ 924(c). He appeals his conviction on the following grounds: (1) he argues the

prosecution wrongfully excluded the sole African-American from the jury panel

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986); (2) he contends the evidence was insufficient to support his conviction on Counts 7 and 8, which correspond to a robbery of Bank of the West on December 6, 2005; and (3) he claims the district court erred in denying his motion to sever Counts 7 and 8. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

I.

Although he was convicted of six robberies, Mr. Hunt challenges only the sufficiency of the evidence underlying Counts 7 and 8. We therefore focus primarily on the facts of the Bank of the West robbery and relate the details of the other five only as relevant to the government's "plan, method and habit" theory and Mr. Hunt's severance argument. We present all facts in the light most favorable to the government, as appropriate on a review of the sufficiency of the evidence. *See United States v. Bowen*, 527 F.3d 1065, 1069 (10th Cir.), *cert. denied*, 129 S. Ct. 312 (2008).

All of the robberies occurred in the Denver metropolitan area between January 2005 and February 2006, although nearly ten months elapsed between the first and the second. Government witnesses testified that in each of the robberies, a man wearing a dark ski mask entered the bank brandishing a gun. In each case, the robber approached the teller or tellers, produced plastic grocery bags, and demanded that the money from the teller drawers be placed into the bags. Witnesses to five of the six robberies described the robber's gun as a two-tone

automatic or semi-automatic pistol with a silver slide or top. Also, the robber warned the tellers in five of the robberies not to give him bait money or dye packs or he would return. Witnesses said the robber in the last four robberies wore a dark hooded sweatshirt and carried a dark backpack.

The Bank of the West robbery was fourth in the spree and shared all of these characteristics. Melinda Lacy, one of the tellers on duty, testified that a robber wearing a black ski mask and hooded sweatshirt came into the bank, pointed a gun at her, and demanded that she put all of her $50 and $100 bills into a black backpack, specifically warning her, "[n]o bait money." R. Vol. XX at 616. She saw a plastic grocery bag inside the backpack. Benjamin Taylor, a customer who also witnessed the robbery, testified in greater detail about the gun, which he described as a "semi-automatic pistol, probably smaller caliber, black body, gray slide." *Id*. at 628. Mr. Taylor also testified that the robber worked with an accomplice and wore a white wire, resembling iPod headphones, which appeared to be attached to an electronic device on his person. When the device made a noise, the robber told his accomplice it was time to go. Mr. Taylor also recalled the robber wore tan boots, a fact seconded by Carlos Romero, a financial services consultant for the bank. Mr. Romero testified that the boots "reminded [him] of the tan Timberlands." *Id.* at 648.

In April 2006, Mr. Hunt was arrested and his apartment and car were searched, along with a bedroom that he used in his mother's house.

Federal agents seized a black and silver semi-automatic pistol, a black backpack, a ski mask, gloves, a stash of new 7-Eleven grocery bags, white headphones, a police scanner, and tan Timberland boots.  In May 2007, a federal grand jury handed down a fourth superceding indictment charging Mr. Hunt with six counts of armed bank robbery and six counts of using and brandishing a firearm during the course of the robberies.  After a jury trial, he was convicted on all counts and sentenced to a prison term of 1,760 months.

II.

A.  *Batson*

During voir dire, Mr. Hunt, who is African-American, challenged the government's use of a peremptory challenge to excuse the sole African-American venire member, Mr. Walker.  The district court credited the government's non-discriminatory reason for the exclusion and overruled the objection. Mr. Hunt renews his challenge on appeal, arguing the government's proffered reasons were specious and a pretext for discrimination.

In *Batson*, the Supreme Court held that the Equal Protection Clause forbids the prosecution from using a peremptory challenge to strike a potential juror solely on account of race "or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." 476 U.S. at 89.  The Court announced a three-step process for trial courts to

follow in evaluating a defendant's equal-protection challenge to a peremptory strike, which we have described as follows:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*United States v. Smith*, 534 F.3d 1211, 1225-26 (10th Cir.), *cert. denied*, 129 S. Ct. 654 (2008) (quotation omitted). The issues in this appeal are (1) whether the government met its burden to present a race-neutral explanation for its strike of Mr. Walker; and (2) whether Mr. Hunt ultimately proved purposeful discrimination. We review the first question de novo and the second for clear error. *United States v. Abdush-Shakur*, 465 F.3d 458, 469 (10th Cir. 2006).

The government contends it excused Mr. Walker because he expressed concerns about law enforcement's investigation of a sexual assault charge brought against his brother. In response to questioning from the court, Mr. Walker stated that the investigation was "probably not" fair. R. Vol. XVIII at 124. Although his attempts to elaborate were confusing, he explained generally that he thought his brother may have had psychological problems that were not taken into consideration by law enforcement and the presiding judge. Ultimately, Mr. Walker said that despite his brother's experience, he believed he could be

impartial.  Following this colloquy, the government made a for-cause challenge against Mr. Walker, which was overruled.  It then struck him with a peremptory challenge.  When Mr. Hunt objected under *Batson*, the government pointed to Mr. Walker's bias stemming from his brother's experience.  The court found no *Batson* violation.

Mr. Hunt argues the government's reason was a pretext for discrimination because Mr. Walker ultimately assured the court he could be fair.  And he accuses the district court of misconstruing the record in finding that Mr. Walker harbored ill-will towards law enforcement. We reject these arguments.  The government clearly offered a race-neutral reason for striking Mr. Walker.  It felt uneasy about his feelings toward law enforcement given his brother's experience.  Whether this uneasiness was justified is not the issue.  "A race-neutral explanation is simply any explanation, no matter how implausible, that is based on something other than the race of the juror." *Abdush-Shakur*, 465 F.3d at 469 (quotation omitted).  Furthermore, the district court did not commit clear error in rejecting Mr. Hunt's charge of intentional discrimination.  It is clear from the transcript that the side-bar with Mr. Walker was confusing, but he clearly expressed disappointment with at least some aspects of the criminal justice system.  Therefore, the district court did not clearly err in finding the government's strike was based on Mr. Walker's bias rather than his race.

B. Counts 7 and 8

   *i.      Sufficiency of the Evidence*

In contrast to some of the other robberies, the government did not adduce DNA or ballistics evidence with respect to the Bank of the West robbery. Mr. Hunt reasons he was convicted on Counts 7 and 8 solely on the basis of the government's theory that all six robberies were carried out in the same manner or with the same "plan, method, or habit." Aplt. Br. at 20. But, he argues, this theory does not hold up with respect to the Bank of the West robbery, and he points to the robber's use of an accomplice and the white iPod-type headphones, which were characteristics unique to the Bank of the West robbery. He also notes the Bank of the West robber did not specifically say "no dye"– he said no "bait money"– nor did he place the plastic bags on the counter, as in the other robberies. Mr. Hunt acknowledges that the prosecution proved he owns tan Timberland boots like those worn by the robber, but he argues this fact alone could not possibly sustain a conviction. He contends his conviction on Counts 7 and 8 "was tainted from the significant scientific evidence received on the other robberies." *Id.* at 21.

"We review the sufficiency of the evidence supporting a criminal conviction de novo." *Bowen*, 527 F.3d at 1075. Our task is to determine whether a reasonable jury could find guilt beyond a reasonable doubt, viewing all direct and circumstantial evidence, and reasonable inferences drawn therefrom, in the

light most favorable to the government. *Id.* at 1076. For a defendant this is a "difficult standard of review, as we reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Spring*, 80 F.3d 1450, 1459 (10th Cir. 1996) (citation and quotation omitted).

We conclude the evidence was sufficient to sustain a conviction on Counts 7 and 8. Contrary to Mr. Hunt's argument, the government relied on more than his ownership of tan Timberland boots. Witnesses testified that a masked robber wearing a hooded sweatshirt, white headphones, and tan Timberland-style boots entered the bank brandishing a gun and ordered the tellers to put money inside a black backpack, which contained a white grocery bag. In addition, Mr. Taylor testified that the robber fled after hearing something on the electronic device attached to his headphones. White headphones and a police scanner were seized from Mr. Hunt's residence, along with a gun matching the description of the robber's gun, a ski mask, grocery bags, a black backpack, and the boots. From this evidence, a rational trier of fact could conclude beyond a reasonable doubt that Mr. Hunt committed the Bank of the West robbery. This conclusion is further bolstered by the similarities between the Bank of the West robbery and the others, which leads us to Mr. Hunt's next argument.

*ii.*     *Severance*

He claims that combining Counts 7 and 8 in a trial with the other charges led to prejudicial joinder because "the strength of the government's case . . . was substantially greater on" the other counts.  Aplt. Br. at 24. In other words, he would have stood a better chance at an acquittal on Counts 7 and 8 had they been tried separately.[1]

"The decision to grant a severance is within the sound discretion of the trial court, and its decision will not ordinarily be reversed in the absence of a strong showing of prejudice.  The burden of a defendant to show an abuse of discretion in this context is a difficult one." *United States v. Jones*, 213 F.3d 1253, 1260 (10th Cir. 2000) (quotations and citation omitted).  We have specifically held that "[a] mere allegation that defendant would have a better chance of acquittal in a separate trial is not sufficient to warrant severance." *United States v. Colonna*, 360 F.3d 1169, 1178 (10th Cir. 2004) (quotation omitted).

Rule 8 of the Federal Rules of Criminal Procedure provides that joinder of separate counts in the same indictment is appropriate "if the offenses

---

[1]     We note that severance of Counts 7 and 8 was not the focus of Mr. Hunt's motion in the district court.  Rather, he sought separate trials for each robbery, arguing vaguely that the "spillover effect of defending against six separate accusations [would be] overwhelming."  R. Vol. I, Doc. 68 at 2.  He did not argue, as he does here, that the Bank of the West robbery in particular differed from the others.  But since the government does not make a waiver argument, and given our ultimate conclusion that the court acted within its discretion, we proceed assuming this issue was preserved.

charged . . . are of the same or similar character, . . . or are connected with or constitute parts of a common scheme or plan." Even so, the district court has discretion to order severance under Rule 14 if the defendant would be prejudiced by the joinder. To establish "real prejudice, the defendant must demonstrate that the alleged prejudice he suffered outweighed the expense and inconvenience of separate trials." *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994) (quotation omitted). Mr. Hunt cannot make that showing here. As the district court noted in denying his motion, in all likelihood, the extensive evidence presented by the government would have been admissible against Mr. Hunt under Federal Rule of Evidence 404(b) to show intent or plan regardless of severance. Therefore, he suffered no prejudice on account of the joinder. Moreover, presenting the same evidence in separate trials would have been inconvenient, time consuming, and a waste of judicial resources. Accordingly, the district court did not abuse its discretion in denying the motion to sever.

The judgment of the district court is AFFIRMED and all pending motions are DENIED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge