**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

      No. 10-3025

SAMUEL R. RUSHIN,

      Defendant-Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. Nos. 6:04-CR-10207-JTM-2 and 6:08-CV-01167-JTM)**

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the brief), Denver, Colorado, for Defendant-Appellant.

David M. Lind, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

Before **HOLMES** and **BALDOCK**, Circuit Judges, and **JOHNSON**, District Judge.[*]

**BALDOCK**, Circuit Judge.

Over the course of six days in August 2004, Defendant Samuel Rushin and an accomplice robbed six convenience stores in Wichita, Kansas, at gunpoint. In December 2005, a jury convicted Defendant on six counts of interference with

---

[*] Honorable William P. Johnson, United States District Judge for the District of New Mexico, sitting by designation.

commerce by robbery, in violation of 18 U.S.C. § 1951; five counts of carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c); one count of brandishing a firearm during a crime of violence, also in violation of § 924(c); and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Defendant to 139 years imprisonment. We affirmed his convictions on direct appeal. United States v. Rushin, 211 F. App'x. 705 (10th Cir. 2007) (unpublished). Now before us is Defendant's second appeal – this time from the district court's denial of his motion, pursuant to 28 U.S.C. § 2255, to vacate or set aside his sentence. United States v. Rushin, 2009 WL 5171781 (D. Kan. 2009) (unpublished). Defendant claims entitlement to post-conviction relief because he ostensibly was denied his Sixth Amendment right to counsel when his trial attorney failed to seek dismissal of the indictment based on a violation of the Speedy Trial Act (STA), 18 U.S.C. §§ 3161–3174.[1] Our jurisdiction arises under 28 U.S.C. § 2255(d).

In considering the denial of a § 2255 motion for post-conviction relief, we review the district court's findings of fact for clear error and its conclusions of law de novo. United States v. Orange, 447 F.3d 792, 796 (10th Cir. 2006). This is consistent with our view that an ineffective assistance of counsel claim presents a mixed question of law and fact ultimately reviewable de novo. Id. But where,

---

[1] We previously granted Defendant a Certificate of Appealability on this claim pursuant to 28 U.S.C. § 2253(c)(1)(B). See United States v. Rushin, No. 10-3025, Order (10th Cir., August 2, 2010) (per Holmes, J.) (unpublished).

2

as here, the district court does not hold an evidentiary hearing, but rather denies the motion as a matter of law upon an uncontested trial record, our review is strictly de novo. See Boltz v. Mullin, 415 F.3d 1215, 1221–22 (10th Cir. 2005). To succeed on an ineffective assistance of counsel claim under § 2255, a defendant has the twofold burden of establishing that (1) defense counsel's performance was deficient, *i.e.*, counsel's "representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) defendant was prejudiced thereby, *i.e.*, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Applying the applicable standards, we affirm, albeit for reasons different than those the district court tendered in denying Defendant's motion.

I.

To secure the accused's right to and the public's interest in the prompt resolution of pending charges, the STA requires that a criminal trial commence "within seventy days from the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which the charge is pending, whichever last occurs." 18 U.S.C. § 3161(c)(1). But because no two cases are alike and some, for a myriad of reasons, are slower to trial than others, included within the STA is "a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." Zedner v.

3

<u>United States</u>, 547 U.S. 489, 497 (2006).  Experience suggests that the provision courts and counsel most often employ to toll the running of the STA's time clock is the "ends-of-justice" continuance provided for in § 3161(h)(7).[2]  Subsection (h)(7)(A) permits a district court, sua sponte or upon motion, to continue a trial setting and exclude the delay, *provided* the court, after considering at a minimum the factors set forth in subsections (h)(7)(B)(i), (ii), and (iv), places on the record "either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."[3]  18 U.S.C. § 3161(h)(7)(A).  "Without on-the-record findings there can be no exclusion under § 3161(h)([7])."  <u>Zedner</u>, 547 U.S. at 507.

In <u>United States v. Doran</u>, 882 F.2d 1511, 1515 (10th Cir. 1989), we explained that subsection (h)(7)'s "exception to the otherwise precise requirements of the [STA] was meant to be a 'rarely used' tool for those cases demanding more flexible

---

[2]  Before the 2008 amendments to the STA, subsection (h)(7) appeared as subsection (h)(8).  <u>See</u> Pub. L. No. 110-406, § 13, 122 Stat. 4291, 4294 (2008).  Post amendment, the subsection remained substantively unchanged.

[3]  Subsection (i) requires the court to consider "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice."  Subsection (ii) asks "[w]hether the case is so unusual or so complex . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established."  Subsection (iv) applies to cases falling outside subsection (ii) and asks "[w]hether the failure to grant such a continuance . . . would deny the defendant reasonable time to obtain counsel, would unreasonably deny [any party] the . . . continuity of counsel, or would deny counsel . . . the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

4

treatment." Since at least United States v. Gonzales, 137 F.3d 1431, 1434–35 (10th Cir. 1998), we have insisted that where a district court grants an "ends-of-justice" continuance pursuant to § 3161(h)(7), the court articulate in *some* detail its reasons for doing so, lest it engender misuse of the exception. To such end, we have reasoned that "[a] record consisting of only short, conclusory statements lacking in detail is insufficient. . . . Simply identifying an event, and adding a conclusory statement that the event requires more time for counsel to prepare, is not enough." United States v. Toombs, 574 F.3d 1262, 1271–72 (10th Cir. 2009).

Because subsection (h)(7)(A) dictates that the district court grant an "ends-of-justice" continuance only "on the basis of its findings," the appropriate time for the court to place its findings on the record is just prior to or contemporaneously with the grant of the continuance. 18 U.S.C. § 3161(h)(7)(A). While the decision to grant a continuance must be prospective, not retrospective, we have nonetheless acknowledged that "in some circumstances a trial court may enter its ends-of-justice balancing on the record after it grants the continuance, sometimes as late as the filing of the defendant's motion to dismiss on [STA] grounds." Doran, 882 F.2d at 1516. In Zedner, the Supreme Court explained:

> Although the [STA] is clear that the findings must be made, if only in the judge's mind, before granting the continuance . . . the [STA] is ambiguous on precisely when those findings must be "se[t] forth, in the record of the case." However this ambiguity is resolved, at the very least the [STA] implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2).

5

Zedner, 547 U.S. at 506–07 (quoting § 3161(h)(7)(A)).[4]

In the unfortunate event that seventy days, less excludable time periods, elapse without a trial, a district court has no choice but to grant a defendant's timely-filed motion to dismiss based on a violation of the STA: "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment *shall be dismissed* on motion of the defendant." 18 U.S.C. § 3162(a)(2) (emphasis added).[5] In other words, "if a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted, and if as a result the trial does not begin on time, the indictment or information must be dismissed." Zedner, 547 U.S. at 508. Because the STA is designed in part to serve the public interest, that a defendant or his counsel is responsible for all or part of the delay "does not unwind [STA] violations. . . . [T]he district court and government are no less responsible under the [STA] merely because it is a defendant who requests a continuance." Toombs, 574 F.3d at 1273.

---

[4] In the Tenth Circuit, we have repeatedly opined, most recently in United States v. Larson, 627 F.3d 1198, 1204 (10th Cir. 2010), that findings belatedly placed on the record will support a previous "end-of-justice" continuance under subsection (h)(7) only where the record provides some indication that the court balanced the relevant interests prior to or contemporaneous with the grant of the continuance.

[5] Section 3162(a)(2) further provides that "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section."

Despite the STA's dictate, the district court may, in the sound exercise of its discretion, dismiss the charges without prejudice. In fact, "[a] violation of the [STA], by itself, is not a sufficient basis for dismissal with prejudice." United States v. Abdush-Shakur, 465 F.3d 458, 462 (10th Cir. 2006). Rather,

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: [1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of [the STA] and on the administration of justice.

18 U.S.C. § 3162(a)(2). Absent a showing of appreciable prejudice to the defendant, a district court generally should dismiss serious charges without prejudice under § 3162(a)(2) unless the delay is extended and attributable to "intentional dilatory conduct, or a pattern of neglect on the part of the Government." United States v. Saltzman, 984 F.2d 1087, 1093 (10th Cir. 1993); see United States v. Artez, 290 F. App'x. 203, 207 (10th Cir. 2008) (unpublished) (opining that defendant's showing of "some prejudice from the delay . . . was not sufficient to compel dismissal with prejudice"). A dismissal without prejudice, in turn, permits the Government to return "a new indictment . . . within six calendar months of the date of the dismissal" in the event the statute of limitations has run. 18 U.S.C. § 3288.

II.

On August 27, 2004, Defendant made his initial appearance on a two-count indictment relating to one of the six robberies with which he and his cohort were ultimately charged. Absent excludable delays, the STA required that Defendant's

7

trial begin seventy days post, or originally no later than November 5, 2004. The district court scheduled trial for October 19, 2004. From that point forward, things went awry. At an October 4 status conference, Defendant made an oral motion for a continuance of the October 19 trial date. On October 7, the district court granted Defendant's first motion for a continuance absent any apparent objection by the Government, and continued the trial until November 30, 2004. The court's sole finding was that the period of delay "was excludable time as provided for in 18 U.S.C. § 3161(h)([7]) in that the ends of justice served by granting the continuance outweigh the best interest of the public and the defendant[] in a speedy trial." Defendant next filed a written motion to continue on November 16. On November 29, the district court granted Defendant's second motion for a continuance without objection, and again purportedly continued the trial pursuant to subsection (h)(7). In addition to an "ends-of-justice" finding, the court added a second finding to its second order of continuance, namely, "that counsel for [Defendant] states that additional time is needed to confer with [Defendant] and conduct investigation in the case to prepare for trial or other disposition of this matter." The court rescheduled trial for January 11, 2005. Then, on January 6, the court, sua sponte and without prior notice or hearing, ordered the trial continued a third time, until February 23, 2005. The court provided no record explanation for its action.

Meanwhile, Defendant, on February 11, 2005, made his initial appearance on a superceding indictment charging him in thirteen counts with criminal misconduct

8

related to all six robberies. Assuming the superceding indictment reset the STA's time clock at least as to the charges arising out of the five robberies uncharged in the original indictment, the new clock originally was set to expire on April 22, 2005.[6] On the same day, February 11, Defendant moved a third time to continue the trial still set at this point for February 23. On February 21, the district court granted the motion once again absent objection, and rescheduled the trial, this time for April 5, 2005. The court's findings contained in its fourth order of continuance were identical to the findings contained in its second order. The saga continued (no pun intended) when on the day set for trial, April 5, Defendant's counsel filed a motion for a competency evaluation of his client. The court granted the motion the same day and vacated the trial setting indefinitely.[7] Following receipt of Defendant's psychiatric evaluation report, the court held a competency hearing on October 11, 2005 and found Defendant competent to stand trial. On October 18, the Government filed a motion, to which Defendant did not object, to reschedule the trial for November 29, 2005. On October 19, the court, "being satisfied that good cause

---

[6] The rule appears to be that "the filing of a superceding indictment does not reset the speedy-trial clock for offenses charged, or required to be joined with those charged, in the original indictment." United States v. Young, 528 F.3d 1294, 1296 (11th Cir. 2008) (citing cases); see United States v. Mora, 135 F.3d 1351, 1355 (10th Cir. 1998) (holding a superceding indictment "which added the charge of 'with intent to distribute' to the original charge of possession . . . did not reset the speedy trial clock").

[7] The STA excludes a "delay resulting from any proceeding, including any examinations, to determine the mental competency . . . of the defendant." 18 U.S.C. § 3161(h)(1)(A).

exists" continued Defendant's trial to November 29. Again, the court simply found "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant[] in a speedy trial." Defendant's jury trial commenced on November 29 and concluded on December 7, 2005.

## III.

In his § 2255 motion for post-conviction relief based on ineffective assistance of counsel, Defendant relied on the Supreme Court's decision in Zedner to assert that his right to a speedy trial as defined in the STA was violated because the district court failed to make adequate on-the-record findings to support its numerous "ends-of-justice" continuances pursuant to § 3161(h)(7). The Government did not disagree with Defendant's contention that under Zedner's rationale the district court's findings related to its various "ends-of-justice" continuances were insufficient. Nor did the Government dispute Defendant's claim that his trial commenced outside the STA's time limits even excluding the period during which Defendant's competency was at issue.[8] Instead, the Government pointed out that the Supreme Court decided Zedner six months after Defendant's conviction, and that prior thereto, both counsel and the court were following "the legal and customary practice regarding the

---

[8] The periods during which the various motions to continue were pending are also excludable. See 18 U.S.C. §3161(h)(1)(D) (excluding from the time in which a trial must commence "delay resulting from any pretrial motion, from the filing of the motion through the . . . prompt disposition of[] such motion"); United States v. Tinklenberg, 131 S. Ct. 2007, 2010–16 (2011) (holding subsection (h)(1)(D) stops the STA clock upon the filing of a pretrial motion regardless of whether the motion has any impact on the trial setting).

different continuances." Rushin, 2009 WL 5171781, at *3. The district court agreed

with the Government and denied Defendant's motion:

> Rushin was convicted on December 7, 2005 . . . , but Zedner was not decided until June 5, 2006. Rushin's counsel was not ineffective for failing to anticipate a future development in the law. See United States v. Harms, 371 F.3d 1208, 1212 (10th Cir. 2004). Rushin has not demonstrated that his attorney's performance fell below an objective standard of reasonableness. Strickland analysis utilizes a two prong test, and since Rushin did not meet the first prong, the court finds it unnecessary to address the second prong.

Id.

For reasons painfully apparent from our discussion of the controlling case law construing the STA, the Government on appeal abandons any claim that Zedner was a "future development in the law." Since at least our 1998 decision in Gonzales and arguably as early as our 1989 decision in Doran, we have insisted that a district court granting an "ends-of-justice" continuance under the STA articulate in more than a cursory fashion its reasons for doing so. Thus, the question on appeal is not whether the STA was violated in this case, for no one disputes that it was.[9] Rather

---

[9] By way of comparison with the district court's findings in this case, the district court in Gonzales entered the following written order purporting to grant an "ends-of-justice" continuance:

> The time period from August 12, 1996, up to and including the new trial date of August 26, 1996, at 9:00 a.m., is hereby excluded from any calculation required by that act known as the Speedy Trial Act, . . . because the interests of justice outweigh the interest of the public and the defendant in a speedy trial. This is based upon the finding that counsel for the United States would be denied the reasonable and necessary time to prepare for trial, taking into account due diligence,

(continued...)

11

the question is whether the performance of defense counsel was constitutionally ineffective when, notwithstanding the STA violation, he failed to move to dismiss the superceding indictment prior to trial.

A.

Consistent with the Strickland standard, we first address the performance of Defendant's trial counsel under an objective standard of reasonableness. Just this term, the Supreme Court reiterated that "[a] court considering a claim of ineffective assistance must apply a '*strong presumption*' that counsel's representation was within a 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (emphasis added) (quoting Strickland, 466 U.S. at 689).

> Recognizing the "temptation for a defendant to second-guess counsel's assistance after conviction or adverse sentence," . . . counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." To overcome that presumption, a defendant must show that counsel failed to act "reasonably considering all the circumstances."

Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Strickland, 466 U.S. at 688, 690). In other words, "[t]he challenger's burden is to show 'that counsel made errors *so serious* that counsel was not functioning as the 'counsel' guaranteed

---

[9](...continued)
and risks which cause a potential miscarriage of justice and risk the continuity of counsel for the United States.

Gonzales, 137 F.3d at 1434 (ellipses in original). We held these findings insufficient to toll the running of the STA's time clock, and discussed in detail our reasons for concluding that the district court "failed to consider all of the necessary factors outlined in § 3161(h)([7])(B) prior to granting the continuance." Id. at 1434–35.

the defendant by the Sixth Amendment.'" Harrington, 131 S. Ct. at 787 (emphasis added) (quoting Strickland, 466 U.S. at 687).

In support of his claim that his trial counsel's performance was deficient, Defendant posits "there was no downside to moving to dismiss the indictment." Defendant states that in the worst case scenario the district court would have dismissed the charges without prejudice, in effect requiring the Government to seek a new indictment.[10] Defendant elaborates as follows: If his defense counsel had moved to dismiss the indictment, the district court "may or may not" have dismissed the indictment without prejudice. If the district court had dismissed the indictment without prejudice, the grand jury "may or may not" have reindicted him on the same charges. If the grand jury had reindicted him on the same charges, he "may or may not" have gone to trial on those charges.

We categorically reject any suggestion that because Defendant *now appears* to have had "nothing to lose," his trial attorney necessarily acted unreasonably within the meaning of the Sixth Amendment by failing to file a motion to dismiss. Rarely *in hindsight* would a defendant – especially one who stands convicted of serious offenses and sits imprisoned for a substantial number of years – appear to have had something to lose by filing such a motion. Yet not every decision on

---

[10] This assumes, of course, that any attempt on the part of the district court to enter its findings in support of its § 3161(h)(7) continuances on the record at the time of Defendant's motion to dismiss would have been futile. See supra at 5–6 & n.4. This is an assumption to which the Government does not object and on which we express no opinion.

13

the part of defense counsel to forego filing a motion to dismiss upon an apparent violation of the STA is suspect under Strickland's first prong. Unlike a panel of federal appellate judges, defense counsel "observe[s] the relevant proceedings, kn[ows] of materials outside the record, and interact[s] with the client, with opposing counsel, and with the [trial] judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" Harrington, 131 S. Ct. at 788 (quoting Strickland, 466 U.S. at 689). Defendant "may or may not" have had something to lose by filing a motion to dismiss. Defendant "may or may not" have lost the progress that his counsel had made in plea negotiations with the Government to that point. Defendant "may or may not" have lost the favor of a district court that had granted him multiple continuances to date. Because possibilities without proof are endless, they are no measure of counsel's performance. Defendant does not carry his burden to show his defense counsel's performance was constitutionally deficient simply by telling us that "there was no downside to moving to dismiss."

In formulating a defense strategy, counsel is entitled to "balance limited resources in accord with *effective* trial tactics and strategies," or, in other words, to critically undertake a cost/benefit analysis of any proposed course of action. Id. at 789 (emphasis added). Rarely, if ever, can we acquire from an appellate record a complete understanding of all the intangible factors that influenced a defense counsel's decision not to undertake a particular course of action. What we can say based on the record circumstances of this particular case, however, is that a

14

reasonable attorney in the sound exercise of his or her professional judgment arguably might have decided to forgo the filing of a motion to dismiss the indictment as largely ineffective, an imprudent use of limited resources, or even unwarranted gamesmanship. See Zedner, 547 U.S. at 502 (recognizing a defendant might "forgo moving to dismiss"). Let us explain why.

A district court does not have unfettered discretion to dismiss an indictment with prejudice for a violation of the STA. See Abdush-Shakur, 465 F.3d at 462. Whether a district court has abused its discretion "depends, of course, on the bounds of that discretion and the principles that guide its exercise." United States v. Taylor, 487 U.S. 326, 336 (1988). Here, the three nonexclusive factors set forth in § 3162(a)(2) bound the district court's discretion in such a manner that we may say, with a degree of confidence, that the district court would have abused its discretion in dismissing the indictment other than without prejudice. The charges against Defendant were quite serious – six robberies with a firearm over the course of six days resulting in thirteen counts of criminal misconduct. By our calculation, Defendant's mandatory minimum sentence was 132 years imprisonment. See Rushin, 2009 WL 5171781, at *1. Furthermore, the only significant period of nonexcludable delay in which Defendant was not complicit was the 31 days, more or less, resulting from the district court's sua sponte continuance on January 6, 2005. See Saltzman, 984 F.2d at 1092–95 (holding a seven-month delay insufficient, in itself, to warrant a dismissal with prejudice). Defendant meanwhile moved for three

15

continuances, resulting in 127 days, more or less, of nonexcludable delay, and agreed to another continuance, resulting in 41 additional days, more or less, of nonexcludable delay. See Artez, 290 F. App'x. at 207 (reasoning the Government should not be penalized for "delays in which the defendant was complicit."). As to the impact of counsel's performance on the administration of justice, Defendant asserts that if his trial attorney had filed a motion to dismiss on the basis of a STA violation, the necessary grant of the motion likely would have improved the strained relationship between counsel and his client, and may have resulted in a plea deal and substantially reduced sentence for the latter. But absent some testimony or offer of proof to that effect, such abstract claims do not persuade us.

To be sure, we do not discount the possibility that some criminal defense attorneys may have moved to dismiss the indictment in this case. The question under Strickland's performance prong, however, is not whether counsel's representation "deviated from best practices or most common custom." Harrington, 131 S. Ct. at 788. Instead, the question is whether defense counsel's failure to file a motion to dismiss, *if* error at all, was an error "'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Id. (quoting Strickland, 466 U.S. at 687). Surely something was to be gained, however slight, by filing such motion because the Supreme Court has said so: "Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute." Taylor, 487 U.S. at 342. This possibility

16

alone encourages Government compliance with the STA, thus promoting the STA's sound administration and furthering the public interest. See Zedner, 547 U.S. at 499. A defendant too "*may* derive *some* benefit" from a dismissal without prejudice: "For example, the time and energy that the prosecution must expend in connection with obtaining a new indictment may be time and energy that the prosecution cannot devote to the preparation of its case." Id. at 503 n.5 (emphasis added). But given the dearth of evidence Defendant presents to support his claim of deficient performance, we are loathe to conclude that the Sixth Amendment required his defense counsel to avail him of the indeterminate benefit of a motion to dismiss and place on the Government the corresponding burden to reindict.

> When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. . . . That presumption has particular force where [as here] a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.

Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam) (internal quotations omitted). Defendant simply has not overcome the "strong presumption" that his defense counsel performed adequately under Strickland's first prong because Defendant has not shown his defense counsel's performance, under the circumstances presented, "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." Strickland, 466 U.S. at 688.

17

B.

Because Defendant has not proven his trial counsel's performance was constitutionally deficient as required by Strickland's first component, we need not address Strickland's second component which requires us to ask whether counsel's performance prejudiced Defendant. See id. at 697. We do dispel any notion, however, that Defendant was somehow prejudiced because he was tried and convicted on an indictment that should have been dismissed without prejudice. Defendant argues that if the pending indictment against him had been dismissed, the result of the proceeding against him necessarily would have been different, notwithstanding any subsequent course of events. Defendant grounds his argument in the Court's oft-repeated words from Strickland that to establish prejudice, "a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Harrington, 131 S. Ct. at 787 (quoting Strickland, 466 U.S. at 694).

Unlike Defendant, we do not confine our reading of the term "proceeding" in the foregoing excerpt to those court processes related to a particular indictment. Prejudice is the touchstone of Strickland's second component. The standard measure of prejudice in the context of an ineffective assistance of counsel claim is the effect an attorney's deficient performance had on the result or outcome. In no meaningful sense has Defendant established a reasonable probability that the result or outcome of the "proceeding" to which he was subjected would have differed if the indictment

18

on which he stands convicted had been dismissed without prejudice. Rather, in all likelihood the Government would have reindicted Defendant, placing him in the same posture as before the dismissal. See Zedner, 547 U.S. at 499 (recognizing that where charges are dismissed for a violation of the STA without prejudice "the prosecutor may of course seek–and in the great majority of cases will be able to obtain–a new indictment").

"A reasonable probability is a probability sufficient to undermine confidence in the outcome."[11] Strickland, 466 U.S. at 694. The reasonable probability standard "asks whether it is 'reasonably likely' the result would have been different." Harrington, 131 S. Ct. at 792 (quoting Strickland, 466 U.S. at 696). Only where "[t]he likelihood of a different result [is] substantial, not just conceivable," can we say confidence in the outcome is undermined. Id. One surely can conceive of a different outcome here if Defendant's trial counsel had moved to dismiss the indictment based on a violation of the STA. The end result "may or may not" have been different. But Defendant in no sense has *proven* the substantial likelihood of a result different from that he now faces.[12]

---

[11] Strickland's "reasonable probability" standard is not a preponderance of the evidence standard, although the difference between the two standards is slight. The former "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 131 S. Ct. at 792 (quoting Strickland, 466 U.S. at 693).

[12] At least four of our sister circuits have held that where an indictment would have been dismissed without prejudice, a defendant could not show prejudice based

(continued...)

19

AFFIRMED.

---

upon trial counsel's failure to seek dismissal under the STA.  <u>Chambliss v. United States</u>, 384 F. App'x. 897, 899 (11th Cir. 2010) (per curiam) (unpublished); <u>United States v. Thomas</u>, 305 F. App'x. 960, 964 (4th Cir. 2009) (unpublished); <u>United States v. Fowers</u>, 131 F. App'x. 5, 6–7 (3d Cir. 2005) (unpublished); <u>Campbell v. United States</u>, 364 F.3d 727, 730–31 (6th Cir. 2004).  The words of the Eleventh Circuit are perhaps apropos in this case:

> If counsel had moved to dismiss the indictment, the district court would have granted a dismissal without prejudice because of the serious nature of the charges and because the delay did not harm petitioner's ability to present a defense.  After the district court dismissed the indictment without prejudice, the Government would have re-indicted him on the same charges. . . .  Because the outcome of the proceedings would not have been different had counsel moved to dismiss the indictment, petitioner has not shown prejudice.

<u>Chambliss</u>, 384 F. App'x. at 899.

20

10-3025, *United States v. Rushin*

**HOLMES**, Circuit Judge, concurring.

Although I concur in the outcome, I write separately because I believe this matter should have been resolved under the second prong of *Strickland*, rather than the first.

As the majority opinion explains, to make out a claim of ineffective assistance of counsel, Mr. Rushin "must show that (1) his counsel's performance was constitutionally deficient, and (2) counsel's deficient performance was prejudicial." *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In applying the two-part *Strickland* test, however, it is well-settled that we "may address the performance and prejudice components in any order, [and] need not address both if [petitioner] fails to make a sufficient showing of one." *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005) (second alteration in original) (quoting *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998)) (internal quotation marks omitted). In other words, a reviewing court may, if it appears to be the more sensible course of action, "proceed directly to the prejudice prong of the *Strickland* analysis." *United States v. Gonzalez*, 596 F.3d 1228, 1233 (10th Cir.), *cert. denied*, 131 S. Ct. 172 (2010).

Contrary to the majority's conclusion, I am not wholly persuaded that trial counsel's performance may be considered reasonable under the circumstances. It is at least arguable, in my opinion, that counsel's failure to file a motion to

dismiss "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Therefore, I think it more prudent to leave the performance question unanswered and to resolve this case under the prejudice prong.

## I.    Deficient Performance

In evaluating whether counsel's performance was deficient, we often "look to the merits of the omitted issue." *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)) (internal quotation marks omitted). If the motion underlying the ineffective-assistance claim—in this case, a motion to dismiss under the Speedy Trial Act ("STA"), 18 U.S.C. §§ 3161–74—would have been meritless, then counsel's performance cannot be said to be deficient because "[c]ounsel is not required by the Sixth Amendment to file meritless motions." *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

As the majority notes, the government concedes that the STA was violated in this case, and a violation of the Act results in mandatory dismissal of the indictment. Accordingly, a motion filed by Mr. Rushin's counsel would not have been meritless because it would have resulted in dismissal of the charges filed against Mr. Rushin, either with or without prejudice. *See* 18 U.S.C. § 3162(a)(2) (providing that "[i]f a defendant is not brought to trial within the [seventy-day] time limit . . . , the information or indictment *shall* be dismissed on motion of the defendant . . . with or without prejudice" (emphasis added)). Therefore, counsel's

2

failure to file such a speedy-trial motion at least arguably falls below an objective standard of reasonableness. *See, e.g.*, *United States v. Palomba*, 31 F.3d 1456, 1464 (9th Cir. 1994) (concluding that defense counsel's performance was deficient when he failed to file a meritorious motion to dismiss charges under § 3161(c) of the STA).

Furthermore, it is difficult to justify counsel's omission as "sound trial strategy," *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689), as there was no apparent benefit to be gained from failing to move for dismissal. On the contrary, there was benefit to lose, because failing to file the motion would deprive Mr. Rushin of a dismissal. Even had the dismissal been *without* prejudice, there is still the possibility that Mr. Rushin would have received some benefit. "Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *United States v. Taylor*, 487 U.S. 326, 342 (1988). "Given the burdens borne by the prosecution and the effect of delay on the Government's ability to meet those burdens, substantial delay well may make reprosecution, even if permitted, unlikely." *Id.* More recently, the Supreme Court noted that "even if a case is dismissed without prejudice, a defendant may derive some benefit. For example, the time and energy that the prosecution must expend in connection with obtaining a new indictment may be time and energy that the

3

prosecution cannot devote to the preparation of its case." *Zedner v. United States*, 547 U.S. 489, 503 n.5 (2006). Accordingly, because it is at least debatable whether trial counsel provided constitutionally deficient assistance when counsel failed to move to dismiss the indictment under the STA, and because it is clear that Mr. Rushin cannot satisfy the prejudice (i.e., second) prong of *Strickland*, as discussed *infra*, I find it more prudent to refrain from passing judgment under the performance (i.e., first) prong of *Strickland*.

## II.    Prejudice

Mr. Rushin's ineffective-assistance claim definitively fails under the second prong of *Strickland* because he cannot demonstrate that he was sufficiently prejudiced by counsel's failure to seek dismissal. In order to satisfy the "prejudice" prong, Mr. Rushin "must show that there is a reasonable probability that, but for counsel's [failure to move for dismissal], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Mr. Rushin argues that the result of the proceeding would have been different "[b]ecause the district court would have had no choice but to dismiss, [and] Mr. Rushin would neither have pled to, nor [have] been convicted on, the indictment that is the subject of this proceeding." Aplt.'s Supp. Opening Br. at 35. That is, he argues that regardless of whether the ultimate result would have been the same (i.e., irrespective of whether he would have been re-indicted and re-convicted), the result as to the *particular* indictment at issue would have been

4

different simply because it would have been dismissed. However, I fully agree with the majority opinion's conclusion that "we do not confine our reading of the term 'proceeding' in [this context] to those court processes related to a *particular* indictment." Majority Op. at 18 (emphasis added). In line with the majority, I agree that we look to whether there is a reasonable probability that the ultimate result of the criminal proceedings against Mr. Rushin would have been different.

Mr. Rushin also advances another reason for why events could have "unfolded" differently had his counsel filed a speedy-trial motion: "Mr. Rushin *could*, for example, have gained newfound confidence in counsel's legal acumen and decided to heed counsel's advice and accept a plea bargain." Aplt.'s Reply Br. at 4–5 (emphasis added). Anything is possible, I suppose. However, as the majority notes, Mr. Rushin has not supported such "abstract claims" with anything passing as proof. Majority Op. at 16 (noting that "absent some testimony or offer of proof . . . such abstract claims do not persuade us"). Accordingly, these claims cannot warrant a conclusion of prejudice.

Significantly, courts that have assessed whether counsel rendered ineffective assistance by failing to move to dismiss under the STA have indicated that a defendant cannot establish prejudice simply by showing that the STA was violated or by showing that the district court likely would have dismissed *without* prejudice. More specifically, as those courts have indicated, in order to satisfy *Strickland*'s second prong in this context, Mr. Rushin must show that the

5

government would have been precluded from refiling the charges, either because the dismissal would have been *with* prejudice or because the applicable statute-of-limitations period would have elapsed. *See Campbell v. United States*, 364 F.3d 727, 730–31 (6th Cir. 2004) (holding that petitioner failed to demonstrate prejudice under *Strickland* because he had not demonstrated that the STA violation would have led to a dismissal with prejudice); *Harvey v. United States*, 850 F.2d 388, 402 (8th Cir. 1988) (finding no prejudice where defendants "concede[d] . . . that the only advantage of such a motion would have been that it would have forced the government to reindict them"); *see also United States v. Sallis*, 404 F. App'x 331, 333 (10th Cir. 2010) (requiring a showing, under the second prong of *Strickland*, that "the government would have been precluded from refiling [the charges], either because the district court would have dismissed them with prejudice under 18 U.S.C. § 3162(a)(1) or because of a statutory bar to their refiling").

## A. Dismissal With Prejudice

Mr. Rushin has not shown that the district court likely would have dismissed with prejudice. As stated above, if the STA is violated, the trial court is statutorily required to dismiss the case. 18 U.S.C. § 3162(a)(1). Although "dismissal of the indictment is mandatory, the district court retains discretion to determine whether the indictment is dismissed with or without prejudice." *United States v. Cano-Silva*, 402 F.3d 1031, 1034 (10th Cir. 2005). We have held that

6

"[t]he fact that a violation [of the STA] has taken place is not alone sufficient for the application of the more severe sanction of dismissal with prejudice, which should be reserved for more egregious violations." *Id.* at 1035. In determining whether to dismiss the case with or without prejudice, § 3162(a)(2) of the STA requires the district court to "consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006) (quoting 18 U.S.C. § 3162(a)(2)). "Prejudice to the defendant is among the 'other' factors the text of § 3162 directs the district court to consider." *Id.* (citing *Taylor*, 487 U.S. at 334).

Mr. Rushin was charged with committing multiple serious offenses. The charges against him included six counts of interfering with commerce by robbery in violation of the Hobbs Act, one count of brandishing a firearm during a robbery, one count of being a felon in possession of a firearm, and five counts of carrying a firearm during a crime of violence. We have previously indicated that charges of this precise nature are "extremely serious," *United States v. Jones*, 213 F.3d 1253, 1255 (10th Cir. 2000), and when "the court determines the offense committed by the defendant is serious, this factor weighs in favor of dismissing without prejudice," *United States v. Saltzman*, 984 F.2d 1087, 1092–93 (10th Cir. 1993). Accordingly, the first factor weighs in favor of dismissal without

7

prejudice here.

The facts and circumstances of the case also weigh in favor of dismissal without prejudice. In evaluating the "facts and circumstances leading to the dismissal, the court . . . focus[es] 'on the culpability of the delay-producing conduct.'" *Id.* at 1093 (quoting *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988)). "[W]e have explained that where the delay in bringing the case to trial is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *United States v. Williams*, 576 F.3d 1149, 1158 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1307 (2010). In this instance, however, there is no evidence that the government acted in bad faith or exhibited a pattern of neglectful or dilatory behavior, nor does Mr. Rushin assert that any such evidence exists.

Whether the defendant was "partially responsible for the delay" should also be taken into consideration. *Id.* In this instance, Mr. Rushin was undoubtedly responsible for a good portion of the delay in that he requested three of the continuances and acquiesced to the others. Furthermore, "a defendant that lets the time run without asserting his rights under the Act has less of a claim to a dismissal with prejudice than a defendant who makes a timely assertion, but is unheeded." *Jones*, 213 F.3d at 1257. Mr. Rushin never asserted his rights under the Act before the trial court—either personally or through counsel. In light of the foregoing, this second factor weighs in favor of dismissal without prejudice in

8

this case.

In evaluating the third factor, "whether a dismissal with or without prejudice serves the administration of the Speedy Trial Act and of justice, a court should consider, among other factors, whether the delay caused by the Government was intentional." *Williams*, 576 F.3d at 1159. As noted, Mr. Rushin does not assert that the government acted in bad faith or engaged in intentional dilatory behavior, so this factor also weighs in favor of dismissing the indictment without prejudice.

As for the additional factor of prejudice to the defendant, Mr. Rushin has not shown that he was prejudiced by the delay. "[T]he defendant has a burden under the [STA] to show specific prejudice other than that occasioned by the original filing." *Saltzman*, 984 F.2d at 1094. "[T]he fact [that] the defendant was subsequently found guilty does not qualify as the type of prejudice relevant to the analysis under § 3162." *Abdush-Shakur*, 465 F.3d at 464. Where a defendant shows, due to the passage of time, that he has lost a crucial witness or that his ability to present his defense at trial has otherwise been impaired, a court would be more likely to find prejudice. *See, e.g.*, *id.* (listing loss of a crucial witness as a potential form of prejudice). However, Mr. Rushin has made no showing concerning lost witnesses or harm to his defense.

To be sure, Mr. Rushin was incarcerated during the period of unauthorized delay and presumably experienced the typical burdens associated with being

9

housed in a penal setting.  However, this is not enough to warrant a dismissal with prejudice, especially in light of the fact that the other factors weigh in favor of dismissal without prejudice.  *See Saltzman*, 984 F.2d at 1094 ("[P]rejudice to the defendant should not be the dispositive factor.").  We have held that a delay of as long as 414 non-excludable days—which is undeniably a greater delay than is present in this case—did not warrant dismissal *with* prejudice when the other factors weighed in favor of dismissal *without* prejudice.  *See Jones*, 213 F.3d at 1258.  Mr. Rushin has not shown that he was prejudiced by the delay.

Accordingly, Mr. Rushin has not demonstrated a reasonable probability that the district court would have dismissed the indictment with prejudice.

## B.      Statute of Limitations

Furthermore, there is no indication in the record that the government otherwise would have been barred from re-indicting Mr. Rushin.  In particular, the record does not indicate that the statute of limitations would have barred any subsequent prosecution of Mr. Rushin.  In his briefing, Mr. Rushin did not make such an assertion.  Indeed, he appeared to concede that he could have been re-prosecuted had the court dismissed the indictment *without* prejudice.  *See* Aplt.'s Supp. Opening Br. at 33 (noting that "[t]he worst that could have happened [in this case] is the district court's dismissing of the charges without prejudice, leaving the government free to attempt to obtain a new indictment").  At oral argument, moreover, both Mr. Rushin and the government expressed the belief

10

that Mr. Rushin could have been re-prosecuted.

In sum, because Mr. Rushin cannot establish that the government would have been precluded from refiling the charges—either because the dismissal would have been *with* prejudice or because the applicable statute-of-limitations period would have expired—he cannot satisfy the second, prejudice prong of *Strickland*. His challenge therefore must fail.

Although I agree with the majority's ultimate determination that Mr. Rushin cannot satisfy *Strickland*, it is *Strickland*'s second prong, rather than its first, that I believe should dictate this outcome. Because Mr. Rushin so clearly fails to demonstrate prejudice, I do not believe it is necessary or prudent to definitively rule on the performance prong.

11