FILED
United States Court of Appeals
Tenth Circuit

February 27, 2018

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSHUA D. BOUZIDEN,

    Defendant - Appellant.

No. 17-6031
(D.C. Nos. 5:16-CV-00516-C and
5:08-CR-00251-C-2)
(W.D. Okla.)

_____

ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **BRISCOE**, Circuit Judges.
_____

    Joshua D. Bouziden filed this motion under 28 U.S.C. § 2255, contending that his prior conviction for first degree manslaughter in Oklahoma did not qualify as a predicate offense under the force clause of the Armed Career Criminal Act ("ACCA"). He argues that Oklahoma's first degree manslaughter statute is not divisible, and, alternatively, that the subsection of the statute he was convicted under (heat of passion manslaughter) cannot qualify as a violent felony under the ACCA because it does not contain the requisite violent physical force required under 18 U.S.C. § 924(e)(2)(B)(i). The district court denied Bouziden's § 2255 motion. The

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court subsequently granted Bouziden a certificate of appealability ("COA") on his first argument, and we granted him a COA on his second argument.

Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM the district court's denial of Bouziden's § 2255 motion.

**I**

On December 12, 2008, Bouziden pled guilty to one count of being in possession of stolen firearms, in violation of 18 U.S.C. § 922(j), and one count of being a felon in possession of firearms, in violation of 18 U.S.C. § 922(g)(1). ROA, Vol. I, at 21–37. The Presentence Investigation Report ("PSR") noted Bouziden had three prior convictions that qualified as ACCA predicate offenses: a 1997 conviction for first degree manslaughter in Oklahoma, and 2002 and 2003 convictions for possession of a controlled dangerous substance with intent to distribute. ROA, Vol. II, at 21–22. Bouziden did not object to the PSR, and the district court adopted the PSR as presented. *See id*. at 32. On April 9, 2009, the district court sentenced Bouziden to 180 months of imprisonment and five years of supervised release. *Id*. at 5; ROA, Vol. I at 40–41. Bouziden did not file a direct appeal.

In 2016, with the assistance of counsel, Bouziden filed a § 2255 motion to vacate, set aside, or correct his sentence, arguing he did not have three predicate offenses under the ACCA in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). ROA, Vol. I, at 68–80. Bouziden did not challenge the conclusion that his two prior drug offenses qualified as predicate offenses; he only argued that his first degree manslaughter conviction did not qualify

2

as a violent felony under the ACCA. *Id*. at 72. Specifically, he argued that (i) the Oklahoma manslaughter statute is indivisible, and (ii) even if it is divisible, the subsection under which he was convicted (heat of passion manslaughter) does not require violent physical force, which Bouziden argued must involve intentional conduct and not merely reckless or negligent conduct. *See id*. at 126–32; *see also id*. at 73 ("The force must also be intentional; mere recklessness or negligent conduct is insufficient." (citing *United States v. Zuniga-Soto*, 527 F.3d 1110, 1116 (10th Cir. 2008)).

The district court denied Bouziden's § 2255 motion, concluding that (i) the Oklahoma manslaughter statute was divisible, and (ii) Oklahoma's heat of passion manslaughter statute requires violent physical force because "the killing of another person satisfies the requirement of causing physical pain or injury to another person." ROA, Vol. I, at 138–140. Bouziden requested a COA, which the district court granted as to the divisibility argument. *Id.* at 147–48. We then granted a COA on the violent physical force argument as well.

## II

"On appeal from the denial of a § 2255 motion, ordinarily 'we review the district court's findings of fact for clear error and its conclusions of law de novo.'" *United States v. Barrett*, 797 F.3d 1207, 1213 (10th Cir. 2015) (quoting *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011)). When "the district court does not hold an evidentiary hearing, but rather denies the motion as a matter of law upon an uncontested trial record, our review is strictly de novo." *Id*. (quoting *Rushin*, 642 F.3d at 1302).

3

**III**

Bouziden's § 2255 motion rests on his argument that the district court erroneously enhanced his sentence under the ACCA. The ACCA provides that a person who violates 18 U.S.C. § 922(g), and who has three prior convictions for a violent felony or a serious drug offense, is subject to a mandatory minimum sentence of 15 years' imprisonment. 18 U.S.C. § 924(e)(1). The statute defines a violent felony as:

> any crime punishable by imprisonment for a term exceeding one year . . . that
>
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>
>> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

In *Johnson*, the Supreme Court held that the residual clause in § 924(e)(2)(B)(ii) ("or otherwise involves conduct that presents a serious potential risk of physical injury to another") was unconstitutionally vague, leaving in effect only § 924(e)(2)(B)(i)'s force clause and § 924(e)(2)(B)(ii)'s enumerated offenses clause. *Johnson*, 135 S. Ct. at 2563.[1] The Court subsequently held that *Johnson* was

---

[1] *Johnson* only affords a § 2255 movant collateral relief if the movant's "enhanced sentence is supported, at least in part, by the now-unconstitutional residual clause of the ACCA." *United States v. Pam*, 867 F.3d 1191, 1203 (10th Cir. 2017).

(continued . . .)

retroactive because it announced a new rule. *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

## IV

### A

If the sentencing court enhanced Bouziden's sentence under the now-void residual clause, Bouziden argues that he was ineligible for an ACCA enhancement because he did not have three qualifying predicate offenses. To determine if this argument will prevail, we must decide whether Bouziden's 1997 conviction for first degree manslaughter in Oklahoma could only have counted as a predicate offense under the residual clause, or if the sentencing court could have counted the offense as a violent felony under § 924(e)(2)(B)(i)'s force clause.

When addressing whether predicate offenses qualify as violent felonies by falling within § 924(e)(2)(B)(i)'s force clause, we use "the categorical approach, which examines the elements of the predicate state conviction in the abstract, rather than the precise conduct giving rise to that conviction." *United States v. Hammons*, 862 F.3d 1052, 1054 (10th Cir. 2017) (emphasis omitted) (citing *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013)). The categorical approach "is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single

---

(cont'd)
The parties appear to agree that the sentencing court relied upon the residual clause. We accept this view of the record and also assume that the sentencing court relied on the residual clause. *See generally United States v. Hammons*, 862 F.3d 1052 (10th Cir. 2017) (making this assumption when the parties similarly agreed).

crime." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). But in some cases, "[a] single statute may list elements in the alternative, and thereby define multiple crimes." *Id*. at 2249. These statutes are described as "divisible." *Id*. When a statute is divisible, we apply the modified categorical approach. The modified categorical approach permits us to "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id*. Once we have determined the elements of the defendant's crime of conviction, we proceed to determine if these elements satisfy § 924(e)(2)(B)(i)'s force clause.

The Supreme Court has identified three ways to discern whether a statute is divisible. *See id*. at 2256. First, a state court decision may provide the answer. *Id*. Second, the statute might make that distinction clear on its face. *Id*. That is, "if statutory alternatives carry different punishments," then these alternatives must be elements, but "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id*. (quoting *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014)). Alternatively, "a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id*. And third, "if state law fails to provide clear answers," a "peek" at the underlying court record might dictate whether the listed items are elements of the offense. *Id*. at 2256–57. For instance, "jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute

6

contains a list of elements, each one of which goes toward a separate crime." *Id*. at 2257.

## B

At the time of Bouziden's conviction for first degree manslaughter, the Oklahoma statute provided:

> Homicide is manslaughter in the first degree in the following cases:
>
> 1. When perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor.
>
> 2. When perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.
>
> 3. When perpetrated unnecessarily either while resisting an attempt by the person killed to commit a crime, or after such attempt shall have failed.

Okla. Stat. tit. 21, § 711 (1997). Any violation of § 711 was "a felony punishable by imprisonment in the custody of the Department of Corrections for not less than four (4) years." Okla. Stat. tit. 21, § 715 (1997).

## C

Applying *Mathis*' three ways to identify divisibility, we determine that two of the three forms of analysis indicate that § 711 is divisible. First, Oklahoma courts treat each subsection of § 711 as a separate crime with separate elements, which indicates that § 711 is divisible. Cases from the Oklahoma Court of Criminal

7

Appeals ("OCCA") refer to a defendant's charge or conviction by citing to a particular subsection and by listing the elements for that particular crime. *See, e.g.*, *Barnett v. State*, 271 P.3d 80, 86–87 (Okla. Crim. App. 2012) (listing the specific "elements" of § 711(2)); *O.W.M. v. State*, 946 P.2d 257, 259 (Okla. Crim. App. 1997) (referring to a charge under § 711(2)); *Revilla v. State*, 877 P.2d 1143, 1150 (Okla. Crim. App. 1994) (referring to "an instruction on misdemeanor-manslaughter under 21 O.S.1981, § 711(1)"). Further, the Oklahoma Uniform Jury Instructions provide separate sets of instructions for each of § 711's three subsections. *See* Oklahoma Uniform Jury Instructions, Criminal (2d Ed. 1997 through 2017) §§ 4-94 through 4-102. Thus, although no single case conclusively answers the question of whether the statute is divisible, the Oklahoma courts uniformly treat the subsections of § 711 as separate crimes. These sources point toward our conclusion that § 711 is divisible.

But the text of § 711 does not indicate whether the statute is divisible. Though § 711 is divided into three distinct subsections, that alone does not inform us whether those subsections are means or elements. Bouziden contends that because all three of §711's subsections carry the same punishment, those subsections must be means in an indivisible statute. *See* Aplt. Br. at 15. But the punishment associated with each subsection is not dispositive because "nothing in *Mathis* suggests that statutory alternatives carrying the same punishment are necessarily means rather than elements." *United States v. Burtons*, 696 F. App'x 372, 378 (10th Cir. 2017) (unpublished); *see also United States v. Robinson*, 869 F.3d 933, 939 (9th Cir. 2017)

8

(holding that multiple statutory alternatives carrying the same punishment do not necessarily clarify whether those alternatives are means or elements).

Further, were it necessary for us to take a peek at the jury instructions given at Bouziden's trial, those instructions favor divisibility because the court instructed the jury using Oklahoma Uniform Jury Instruction for "Manslaughter in the First Degree by Heat of Passion," as defined by § 711(2). ROA, Vol. I, at 113–25. Those instructions set forth the elements of heat of passion manslaughter in detail. *See id*. at 119 (listing the elements of first degree heat of passion manslaughter); 120 (same); 121 (listing the elements for heat of passion); 122 (defining provocation); 123 (defining passion); 124 (defining "cooling time" for the distinction between heat of passion manslaughter and homicide); 125 (defining "causal connection" as the term is used in heat of passion manslaughter). The instructions given in Bouziden's case did not include any reference to § 711(1) or § 711(3), or to any of the elements of those crimes. *See generally id*.

Therefore, under a *Mathis* analysis, § 711 is divisible because the statute has multiple distinct subsections which Oklahoma courts—like Bouziden's state trial court—treat as separate crimes. Under the modified categorical approach, we can look to the jury instructions to determine which part of a divisible statute was applied in the defendant's case. *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). Here, we see the jury instructions only included the elements of Oklahoma's heat of passion manslaughter statute, § 711(2). *See* ROA, Vol. I, at 113–25. The

district court correctly concluded that § 711 is divisible and that Bouziden was convicted of violating § 711(2).

Although the district court denied a COA on the issue of whether Bouziden's conviction under § 711(2) (heat of passion manslaughter) satisfies the violent physical force required under 18 U.S.C. § 924(e)(2)(B)(i), we granted a COA on this issue to specifically address whether the intent required for a conviction under § 711(2) for heat of passion manslaughter satisfies the force requirement of § 924(e)(2)(B)(i). The OCCA has held that § 711(2) is not a deliberate intent crime because "heat of passion requires the defendant to act on the force of a strong emotion following adequate provocation that would naturally affect the ability to reason and render the mind incapable of cool reflection." *Hogan v. State*, 139 P.3d 907, 924 (Okla. Crim. App. 2006) (quoting *Black v. State*, 21 P.3d 1047, 1066 (Okla. Crim. App. 2001)).

Instead, the OCCA has treated § 711(2) as a general intent crime. First, in *Morgan v. State*, the OCCA suggested model jury instructions for use when § 711(2) is charged. 536 P.2d 952, 959–60 (Okla. Crim. App. 1975) *overruled on other grounds by Walton v. State*, 744 P.2d 977 (Okla. Crim. App. 1987). These instructions define voluntary manslaughter as "unlawful and *intentional killing* of another under the influence of a sudden heat of passion caused by adequate provocation, and without malice." *Id*. at 959 (emphasis added). Since its ruling in *Morgan*, the OCCA has consistently held that under § 711(2) "[t]he question is

10

whether, *in addition to evidence of intent*, there was evidence that [the defendant] killed the deceased with adequate provocation, in a heat of passion, without the design to effect death." *Davis v. State*, 268 P.3d 86, 118 (Okla. Crim. App. 2011) (emphasis added). Thus, under Oklahoma law, § 711(2) is a general intent crime.[2]

General intent can be sufficient to meet the force clause of the ACCA because "[t]he presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA." *United States v. Ramon Silva*, 608 F.3d 663, 673 (10th Cir. 2010). And killing another person with general intent is using "violent force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis omitted). Therefore, § 711(2) required proof of violent physical force which satisfies the force clause of the ACCA, and is thereby a valid predicate offense under the ACCA.

---

[2] Because we conclude that § 711(2) is a general intent crime, we need not address the parties' arguments regarding *Voisine v. United States*, 136 S. Ct. 2272 (2016). *Voisine* would only have been potentially relevant in this case if the mens rea of the predicate offense at issue were recklessness. *See id*. at 2280.

11

**VI**

We AFFIRM the district court's denial of Bouziden's 28 U.S.C. § 2255 motion.

Entered for the Court


Mary Beck Briscoe
Circuit Judge